UNITED STATES of America, Plaintiff–Appellee,

Alice Harris, Claimant/Appellant,

v.

U.S. CURRENCY, $83,310.78, Defendant.

No. 87–1853.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 1988. Decided July 18, 1988.

Robert Waggener and Stuart Hanlon, Tamburello, Hanlon & Bresciani, San Francisco, Cal., for claimant-appellant.

R. Steven Lapham Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before BROWNING, ALARCON and NORRIS, Circuit Judges.

ALARCON, Circuit Judge:

In this civil forfeiture proceeding, Alice Harris (Harris) appeals from the denial of her motion under Fed.R.Crim.P. 41(e) for the return of currency seized from her residence and from the order granting summary judgment against her on the merits of her claim that the government lacked probable cause to believe the currency seized was connected to an illegal drug transaction.

We must first decide whether it is proper to deny a Rule 41(e) motion for the return of property and the suppression of evidence after the filing of a civil action for its forfeiture. We conclude that dismissal of a Rule 41(e) petition is compelled by Fed.R. Crim.P. 54(b)(5). We next consider whether there was probable cause to believe that the currency seized was connected to an illegal drug transaction. Because the aggregate of facts show that probable cause existed to support the forfeiture, we affirm the order granting the government's motion for a summary judgment. We discuss each issue and the facts pertinent thereto under separate headings.

I.

Viability of a Rule 41(e) Motion After the Filing of a Forfeiture Action

On March 10, 1985, officers of the Vallejo Police Department seized $125,-410.00 from the residence of Alice Harris. On March 15, 1985, Harris filed a replevin action in the Solano County Superior Court against the City of Vallejo and its police department for wrongful possession and conversion of the currency. The Solano County Superior Court issued a temporary restraining order to prevent the transfer of the currency to any other person or agency. On March 19, 1985, after a hearing, the Solano County Superior Court enjoined the Vallejo Police Department from transferring the currency to any agency other than the Internal Revenue Service or the State of California Franchise Tax Board.

The Internal Revenue Service served a lien upon the City of Vallejo to pay $42,-099.22 from the seized currency for unpaid taxes. The City of Vallejo complied and distributed that amount to the Internal Revenue Service. On July 15, 1985, Harris filed a motion for the return of the remaining funds. The Solano Superior Court denied this motion without prejudice on August 5, 1985.

On August 26, 1985, a United States Magistrate issued a warrant pursuant to 21 U.S.C. § 881 (1982) directing that the remaining currency be seized and that forfeiture proceedings be initiated. Thereafter, the City of Vallejo filed a motion to dissolve the injunction because of the seizure warrant. Harris filed an opposition to this

motion on the ground that the United States had no jurisdiction to seize the currency held under the control of the Solano County Superior Court until the replevin action was concluded.

Prior to any hearing on the motion to dissolve the injunction, the replevin action was settled by the parties in January of 1986. Pursuant to the settlement, Harris filed a request for dismissal of the state proceedings in February of 1986.

On March 17, 1986, the Drug Enforcement Administration (DEA) seized the remaining $83,310.78 from the police department of the City of Vallejo pursuant to the warrant issued on August 26, 1985. On May 8, 1986, the DEA served notice of the seizure of the funds on Harris.

Harris submitted a claim to the DEA for the currency and posted the required bond on May 27, 1986. On July 31, 1986, she filed a motion pursuant to Rule 41(e) for the return of the currency and the suppression of evidence.

The United States filed this in rem forfeiture action the next day, on August 1, 1986. Harris filed a *second* motion for the return of the currency and the suppression of evidence which she consolidated with her earlier motion. She also filed a motion for summary judgment in the forfeiture action on the ground that probable cause did not exist that the currency was connected to an illegal drug transaction.

The government filed an opposition to Harris's motions and a counter motion for partial summary judgment on the issue of probable cause to seize the currency.

Following argument on these motions, the district court denied the consolidated Rule 41(e) motions, denied Harris's motion for a summary judgment and granted the government's motion for a partial summary judgment. On February 27, 1987, the parties stipulated that Harris would waive her right "for all time" to prove at trial by a preponderance of the evidence that the currency is "not forfeitable pursuant to the relevant statutes," but reserving the right to appeal the adverse rulings of the district court. Pursuant to this stipulation, the district court entered a final judgment of forfeiture against the currency. Execution of the judgment was stayed pending exhaustion of all appeals.

Harris contends that the district court erred in concluding that Fed.R.Crim.P. 54(b)(5) precluded consideration of her Rule 41(e) motion for the return of property and the suppression of evidence. We disagree.

Rule 54(b)(5) expressly provides that the Federal Rules of Criminal Procedure "are not applicable to ... civil forfeiture of property for violation of a statute of the United States." The District of Columbia Circuit held in *In re Seizure Warrant*, 830 F.2d 372 (D.C.Cir.1987), that Rule 54(b)(5) compels the dismissal of Rule 41(e) motion in a *civil* forfeiture proceeding where there are no criminal proceedings pending and the property was not seized for use in a criminal prosecution. *Id.* at 374. We agree with the District of Columbia Circuit's interpretation of Rule 54(b)(5). We recognize that the district court reached a contrary conclusion in *Camacho v. United States*, 645 F.Supp. 725, 726–27 (E.D.N.Y. 1986). We are not persuaded by its analysis of this issue.

Harris argues that Rule 54(b)(5) does not apply because she filed her initial Rule 41(e) motion prior to the filing of the civil forfeiture action. In support of this proposition, Harris asserts that

[i]n *United States v. $8,850*, 461 U.S. 555 [103 S.Ct. 2005, 76 L.Ed.2d 143] (1983), the Supreme Court declared that the proper preforfeiture complaint procedure for a claimant to follow when she believes her property has been illegally seized is to file a Motion for Return of Property pursuant to Federal Rule of Criminal Procedure 41(e).

Harris misperceives the holding in *United States v. $8,850 in United States Currency*. The issue before the Supreme Court in that matter was whether the claimant was denied her right to due process by the 18-month delay by the government in filing a civil proceeding for forfeiture of currency. *Id.* at 562. In discussing the factors to be applied in determining whether the delay in filing the forfeiture proceeding was unreasonable, the Court held that the trial court should weigh "the claimant's asser-

tion of the right to a judicial hearing." *Id.* at 568. In this context, the Court stated "[a] claimant is able to trigger rapid filing of a forfeiture action if he desires it." *Id.* at 569. The Court next suggested several triggering remedies including the right to "file a motion under Federal Rule of Procedure 41(e) for a return of the seized property." *Id.* The Court noted that the claimant had not taken any action to trigger the filing of a forfeiture proceeding. Thus, the discussion of the possible triggering mechanisms was clearly dictum. The Supreme Court concluded that the delay was reasonable and upheld the forfeiture. *Id.* at 569–70. The Supreme Court simply did not address the issue before us, namely, whether a Rule 41(e) motion survives the filing of a civil forfeiture proceeding.

In this matter, the civil forfeiture action was initiated the day following the filing of Harris's Rule 41(e) motion. Assuming the government was aware of the Rule 41(e) motion, Harris was successful in triggering the instant filing of a forfeiture proceeding wherein she could assert her right to a return of her property or a suppression of the evidence.

Harris's further argument that "Fourth Amendment protections and the exclusionary rule apply in forfeiture cases because of their 'quasi-criminal nature'" correctly reflects the state of the law. She cites *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 702, 85 S.Ct. 1246, 1251, 14 L.Ed.2d 170 (1965) and our decision in *United States v. One 1977 Mercedes Benz,* 708 F.2d 444, 448 (9th Cir.1983), *cert. denied, sub nom. Webb v. United States,* 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984), for this well established principle. Harris asserts that the government should not be allowed to prevent a fourth amendment challenge by filing a civil forfeiture action. We agree. The fact that Rule 41(e) is not applicable to a civil forfeiture proceeding, however, does not foreclose the assertion of her fourth amendment rights. In *One 1977 Mercedes Benz,* a case relied upon by Harris for the proposition that the exclusionary rule applies to civil forfeiture proceedings, we reviewed a claimant's Fourth Amendment challenge to the sei-

zure of disputed evidence raised in opposition to the government's motion for a summary judgment. We affirmed the order granting the government's motion for summary judgment because "the seizure of the disputed evidence did not violate Webb's rights under the fourth amendment." *Id.* at 446.

In the matter before us, Harris filed a motion for a summary judgment. The government successfully opposed her motion on the ground that there were disputed issues of fact concerning her claim that she was the owner of the currency and "that she's got some Fourth Amendment violation that would damage the probable cause argument." The denial of her motion for a summary judgment did not preclude her from demonstrating at trial the accuracy of her version of the disputed facts concerning the lawfulness of the seizure and the credibility of the officer who signed the affidavit for the warrant. Contrary to Harris's claim that denial of her Rule 41(e) motion left her without a procedure to assert her constitutional rights, summary judgment is an available and appropriate pretrial remedy to challenge the legality of a seizure under the Fourth Amendment in a civil forfeiture proceeding. Harris's strategic decision to waive her right to a trial in this matter on the disputed factual issues after the denial of her motion for a summary judgment precluded the district court from reaching the merits of her fourth amendment claim.

For the first time on appeal, Harris contends that the district court erred by not treating her Rule 41(e) motion as a civil equitable proceeding. She argues. that "[t]here is a long line of authority based on equitable principles that an individual has a right to move for the return of his/her property under Rule 41(e) where there are no pending criminal proceedings." Harris refers us to our recent decision in *United States v. Martinson,* 809 F.2d 1364 (9th Cir.1987) in support of this assertion. *Martinson* is clearly distinguishable. In *Martinson,* unlike the circumstances presented in the record in this matter, civil forfeiture proceedings were not filed pursuant to 21

U.S.C. § 881(b) after the claimant's property was seized. Moreover, this court was advised that the property was destroyed by the government while the *Martinson* appeal was pending before this court. *Id.* at 1366. Under these extraordinary circumstances, we concluded in *Martinson* that jurisdiction existed to grant equitable relief, including the award of damages, notwithstanding the fact that the claimant had filed under Rule 41(e). In explaining our reliance on equitable principles, we noted in *Martinson* that "this is not a case in which the property in question was forfeited pursuant to statute after adequate notice to the movant." *Id.* at 1368 n. 3. As discussed above, when a civil forfeiture proceeding has been filed, the claimant has adequate remedies to challenge any fourth amendment violation. Accordingly, when a civil forfeiture proceeding is pending, there is no need to fashion an equitable remedy to secure justice for the claimant. The district court did not err in denying the Rule 41(e) motion.

## II.

### The Aggregate of Facts Demonstrate Probable Cause of a Connection to a Narcotics Transaction

■ Harris contends that the district court erred in concluding that there was probable cause to believe that a nexus existed between the seized currency and illegality. We review de novo a grant of summary judgment. *United States v. One 1980 Mercedes Benz 500 SE,* 772 F.2d 602, 604 (9th Cir.1985). We are persuaded that probable cause was demonstrated. In a civil forfeiture proceeding instituted pursuant to 21 U.S.C. § 881, "the government initially must demonstrate probable cause to believe that the property was involved in an illegal drug-related transaction." *United States v. 5,644,540.00 In U.S. Currency,* 799 F.2d 1357, 1362 (9th Cir.1986). Probable cause is shown if the government produces "less than prima facie proof but more than mere suspicion." *United States v. One 56–Foot Yacht Named Tahuma,* 702 F.2d 1276, 1282 (9th Cir.1983). Probable cause is shown if "the aggregate of facts gives rise to more than mere suspicion that the property was exchanged for or intended to be exchanged for drugs." *United States v. 5,644,540.00 In U.S. Currency,* 799 F.2d at 1363. In applying the "aggregate of facts" test "no single fact is dispositive with regard to the probable cause issue...." *Id.*

The district properly applied the "aggregate of facts" test and found that the government had shown that there was more than a mere suspicion that the seized currency was connected to an illegal drug transaction. Our review of the record has led us to the same conclusion.

Officers of the Vallejo Police Department went to Harris's residence to investigate a battery allegedly committed by her son, Robert Batteau. Harris told the officers that her son was not inside. The officers requested permission to enter the residence to search for Batteau. Permission was granted.

Once inside, the officers observed Yen Thi Phem walk out of the bathroom. She is Batteau's wife. No one entered the bathroom. Shortly thereafter, however, the officers heard the bathroom being locked. Suspecting that Batteau was inside, the officers asked him to come out of the bathroom. As Batteau opened the door, he kicked something behind the door. After Batteau left the room, the officers found a brown, plastic shopping bag. The bag contained $125,410 in cash.

The currency was shown to each of the persons in the residence. One of the officers testified as follows:

> I asked "Does this money belong to any of you?" They all replied "No!" I asked "do you know anything about this money?" They all replied "No!" I asked "If the money does not belong to any of you and you do not know anything about it, do you mind if I seize it?" They all replied "No!" I was at the home for another 1½ hours and none of them said anything about the money.

Batteau was arrested for battery. The officers seized the money and a .32 caliber revolver.

In the affidavit filed in support of the search warrant, DEA Agent David K. Schickendanz alleged that the Vallejo police officers heard the toilet running as Batteau walked out of the bathroom. Agent Schickendanz also alleged that Batteau had been convicted for possession for sale of a controlled substance in 1973 and 1983.

We have previously held that possession of a large amount of cash "is strong evidence that the money was furnished or intended to be furnished in return for drugs." *United States v. 93,685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th Cir.) (per curiam), *cert. denied sub nom. Willis v. United States*, 469 U.S. 831 105 S.Ct. 119, 83 L.Ed.2d 61 (1984). Batteau's attempt to hide the money is also a relevant fact in considering whether there is more than a mere suspicion of its connection with an illegal drug transaction.

Evidence of Batteau's 1973 conviction for possession of a controlled substance for sale, his 1983 conviction for possession, and his arrest for possession in 1984 are circumstances demonstrating more than a mere suspicion of his involvement in illegal drug transactions.

In her opening brief, Harris argues that probable cause does not exist to connect the currency with a narcotics transaction because "there still must be some evidence of drugs or drug paraphernalia in order to adequately establish a 'connection' with a drug enterprise." None of the cases cited in support of this proposition so hold.

It is quite true that in each of the cited cases the aggregate of facts included the presence of drug paraphernalia or a controlled substance in addition to currency. The fact that a controlled substance or related paraphernalia was not found in the Harris' residence is not dispositive. In reviewing the record we look to the aggregate of facts, not the presence or absence of one factor. *$5,644,540.00 in United States Currency*, 799 F.2d at 1363.

Our independent review of the evidence presented in support of the government's partial motion for a summary judgment has convinced us that probable cause existed for the belief that the seized currency was used in connection with a drug transaction. Thus, the court did not err in granting the government's motion. The judgment is Affirmed.