824 P.2d 142

**IDAHO DEPARTMENT OF LAW ENFORCEMENT By and Through Mack W. RICHARDSON, Jr., Director, Plaintiff–Respondent,**

v.

**$34,000 UNITED STATES CURRENCY, Defendant,**

**and**

**Ruben Redolfo Rodriguez, Real Party in Interest–Appellant.**

No. 18983.

Court of Appeals of Idaho.

Dec. 11, 1991.

Petition for Review Denied Feb. 14, 1992.

Dennis L. Albers, Grangeville, for real party in interest-appellant.

Larry J. EchoHawk, Atty. Gen., W. Cory Cartwright, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Ruben Redolfo Rodriguez appeals from a judgment of the district court forfeiting to the state $34,000 seized from Rodriguez' car. Following a court trial, the forfeiture was granted pursuant to I.C. § 37–2744 on the basis that the money was used in connection with drug transactions. Rodriguez' arguments on appeal encompass illegal search and seizure, application of an erroneous standard of proof, and the misinterpretation of evidence. We affirm.

### Facts

At about midnight on September 26, 1989, Idaho State Police Officer Ronald Pumphrey stopped Rodriguez for speeding on Interstate 15 south of Pocatello. Rodriguez, travelling with his girlfriend in a car rented by an absent third party, was unable to produce a driver's license or other identification. However, he did tell Officer Pumphrey his name, social security number, birth date, and that he was a resident of Tucson, Arizona. He also produced the car's rental agreement, which indicated that neither he nor his girlfriend was authorized to drive the car. When Officer Pumphrey radioed for information about Rodriguez, he was told that the Arizona computer was down. He then asked Rodriguez for permission to search the car, which was given. To aid in the search, the officer called for the Bannock County Canine Unit. Shortly thereafter, Deputy Fagnant of the Bannock County Sheriff's Office arrived with his dog Xavier. Xavier had been specially trained to detect marijuana, cocaine, and heroin by scent. The officers testified that when the dog arrived, Rodriguez withdrew his permission to search the car. Soon, Officer Pumphrey received a radio message from dispatch that the Arizona computer was working again and had responded with the information that Rodriguez' driver's license had been suspended in Arizona. Officer Pumphrey arrested Rodriguez for driving without privileges and placed him in the officer's patrol car.

Because Rodriguez' girlfriend was not authorized to drive the rental car and it was nighttime, Officer Pumphrey decided to impound the car, using a standard impound and inventory form he began to complete at the scene. At about the same time, Deputy Fagnant walked Xavier around the outside of the car. When the dog approached a corner of the trunk, he "alerted" or became excited as he had been trained to do when detecting drugs. Officer Fagnant then sat Xavier on the ground a few feet behind the rear of the car and let go of the leash so he could help Officer Pumphrey with the inventory of the trunk. When Officer Pumphrey opened the trunk Xavier leapt inside and "indicated" on a black briefcase and a nylon bag. Without disturbing those items, the dog was removed, the trunk was closed, and the car was driven to the Bannock County Sheriff's office.

A warrant to search the car for controlled substances and other items was obtained. When the trunk and briefcase were opened pursuant to the warrant, $34,000 in cash was found. Special Agent Phillips, from the Idaho Bureau of Narcotics, testified that the money was arranged in $1,000 bundles of bills of various denominations, which in turn were bundled into three larger units of $10,000 each. He stated that when he opened the nylon bag, he noted a moderate scent of marijuana. However, the search produced no drugs from the car or from any of the containers found within. Earlier searches of Rodriguez and his girlfriend also produced no controlled substances. Nine days after the warrant was executed the police conducted an experiment, dividing the money into four groups and hiding the groups in different locations in an office at the sheriff's

214

station.  Xavier detected the money in all four locations.

## Assignments of Error

First, Rodriguez claims that the court erroneously admitted the money into evidence because it was illegally seized in that the inventory search was merely a pretext to open the trunk when the dog was present.  Second, he asserts that the court should have applied a reasonable doubt standard of proof in the forfeiture proceeding, instead of the preponderance of evidence standard set forth in I.C. § 37–2744. Third, he argues that the court erroneously allowed Special Agent Phillips to render an opinion on the ultimate issue that the money had been used in connection with drug trafficking.  Fourth, Rodriguez claims the court erred when it concluded that his adjusted gross income was $25,108 and that the cash he could have on-hand from legitimate sources was much less than that amount.  Fifth, he argues that the court erroneously considered a previous marijuana charge from Arizona.

## Search and Seizure

Rodriguez claims that his car was searched and his money seized in violation of his fourth amendment rights.  He does not dispute the propriety of Officer Pumphrey's acts of stopping him for speeding and arresting him for driving with a suspended license.  However, he argues that impounding the rental car and conducting the inventory search was merely a pretext for giving Xavier, the drug-sniffing dog, access to the trunk.  Rodriguez emphasizes that he had revoked his consent to search before the dog was led around the car and to the trunk.  He states that Officer Pumphrey did not have probable cause to conduct the search and that without the dog's help, the officers would not have had sufficient probable cause to support the search warrant which led to the discovery of the money.  Because Rodriguez' assertions present a constitutional question, we will defer to the district court's factual findings on this matter unless they are clearly erroneous.  *State v. Shepard,* 118 Idaho 121, 795 P.2d 15 (Ct.App.1990).  However, we

exercise free review over the court's determination whether the constitutional requirements have been satisfied in light of the facts found.  *Id.*

The fourth amendment to the United States Constitution guarantees that a person will be free from unreasonable searches and seizures.  This guarantee includes a reasonable expectation of privacy regarding the interior of one's automobile. *Coolidge v. New Hampshire,* 403 U.S. 443, 461–62, 91 S.Ct. 2022, 2035–36, 29 L.Ed.2d 564 (1971).  Even though it is a rule grounded in criminal law, the exclusionary rule of the fourth amendment applies to civil forfeiture proceedings.  *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 697–98, 85 S.Ct. 1246, 1249, 14 L.Ed.2d 170 (1965); *United States v. U.S. Currency, $83,310.78,* 851 F.2d 1231, 1234 (9th Cir.1988); *Richardson v. $4,543 United States Currency,* 120 Idaho 220, 225, 814 P.2d 952, 957 (Ct.App.1991).  Property which has been seized in violation of a claimant's constitutional rights may still be the subject of a forfeiture proceeding. *I.N.S. v. Lopez Mendoza,* 468 U.S. 1032, 1046–47, 104 S.Ct. 3479, 3487–89, 82 L.Ed.2d 778 (1984).  However, any evidence so procured is not admissible in a civil forfeiture action.  *One 1958 Plymouth Sedan,* 380 U.S. at 698, 85 S.Ct. at 1249.

Generally, a car may be impounded for safekeeping when the owner or operator of the car is arrested away from his home.  W. LaFave, SEARCH AND SEIZURE, § 7.3(c), p. 85 (2d ed. 1987).  Impounding the car using established procedures is a valid exercise of the community caretaking function of the police and once a car is impounded the police are authorized to conduct an inventory search of the vehicle.  *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

When Officer Pumphrey arrested Rodriguez he had two choices: leave the car parked on the Interstate or impound it. He was required to impound it based on established procedures of the Idaho State

Police. Other than police officers, there was no one present who could legally drive or take control of the car. Neither Rodriguez nor his girlfriend was listed on the car's rental agreement as authorized drivers and the agreement specified that the vehicle could be released only to authorized drivers. In fact, Rodriguez testified that the car had been rented by and to a friend who worked for Ford car rental because Rodriguez did not have a license. Officer Pumphrey testified that for the safety of the vehicle and the travelling public, the State Police are "not allowed to leave a vehicle on the highway after we remove someone from the vehicle" especially if it is nighttime and the officer cannot determine that a person in the vehicle or on the scene rightfully may be given custody of the vehicle. Officer Pumphrey stated that, in such a case, it is imperative the "vehicle be impounded and taken safely off the roadway." Consequently, impounding the car was proper and a valid exercise of the caretaking function of the police. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092 (1976).

■ Once Rodriguez' car was impounded, the police were authorized to conduct an inventory search. *Bertine, supra; Opperman, supra.* Officer Pumphrey testified that the purpose of the inventory was to protect the vehicle, its contents, and all the parties involved. He used a standard form entitled "Idaho State Police Towed Vehicle Inventory" when he began the search, and the form was admitted into evidence. An inventory of a vehicle properly includes a locked trunk. *See* W. LaFave, SEARCH AND SEIZURE, § 7.4(a), p. 112 (2d ed. 1987). Here, when the officers opened the trunk to record its contents, Xavier jumped inside and focused on the briefcase and bag. Officer Pumphrey testified that when he raised the lid, the dog

> just jumped right into the trunk. I mean, just right by me. He just—and just—well, I would consider that he went kind of crazy, just—he was very excited and was scratching and tearing at a bag and a briefcase and—at the right rear corner of the trunk just like he was digging for something.

Officer Fagnant described Xavier's conduct as an instinctive reaction to a smell the dog recognized from his training, and that the dog just "piled [inside]. He had alerted there, was excited." Without disturbing the contents of the trunk, the officers closed the lid and drove the car to the police station. Officer Pumphrey completed the inventory at the police station. There, officers also obtained a search warrant and conducted the search that produced the money. In view of these facts, we hold that opening and closing the trunk while it was on the side of the road was an appropriate part of the inventory search.

Rodriguez also submits, however, that because Officer Pumphrey was suspicious of him, the inventory search was invalid. At trial, Officer Pumphrey testified that before he began the inventory, he was suspicious that Rodriguez may have been engaged in illegal activity, although at that time he could not specify what the illegal activity was. Rodriguez asserts that this mere suspicion did not authorize Pumphrey to call in a dog and that without the dog's alert to the trunk and the briefcase, the officers would not have had enough probable cause to support the search warrant.

■ The fact that Officer Pumphrey suspected something might be awry when he called for the dog does not render the search violative of the fourth amendment. Rodriguez was validly stopped and arrested, and his car properly impounded. We are aware of no authority that requires an officer to curtail an otherwise valid inventory search merely because he is suspicious of illegal activity. Furthermore, the fact that Rodriguez withdrew his consent when he learned a dog would be involved does not matter. Well-established case law indicates that the use of a dog trained in detecting narcotics does not constitute a search prohibited by the fourth amendment so long as the intrusion presented by the dog is limited. *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983); *United States v. Stone*, 866 F.2d 359, 363 (10th Cir.1989);

*United States v. Hardy,* 855 F.2d 753, 758–59 (11th Cir.1988) *cert. denied,* 489 U.S. 1019, 109 S.Ct. 1137, 103 L.Ed.2d 198 (1989); *United States v. 1988 BMW 750 IL,* 716 F.Supp. 171, 175 (E.D.Pa.1989). The limited intrusion presented by the dog in this case did not infringe on Rodriguez' fourth amendment rights. Here, Xavier initially sniffed the outside of the car and became excited when it detected a scent it apparently recognized as marijuana, cocaine, or heroin. We do not find the dog's sniffing of the exterior of a rental vehicle stopped on a public road, when the operator has been arrested and found not to be authorized to drive the vehicle, to be overly intrusive or an invasion of that operator's right to privacy. *See Place,* 462 U.S. at 707, 103 S.Ct. at 2644; *Hardy,* 855 F.2d at 759. Also, the fact that the dog disobeyed a command and instinctively jumped inside when the trunk was opened does not render the inventory search invalid. *See Stone,* 866 F.2d at 363–64 (dog instinctively jumping into open hatchback when smelling drugs not violative of fourth amendment). Therefore, we find that the inventory search and the seizure of the money was proper.

## The Forfeiture Statute

■ Rodriguez asserts that because a forfeiture proceeding is essentially penal or quasi-criminal in nature, the court erred when it applied the preponderance of evidence standard set forth in I.C. § 37–2744. Rodriguez asserts that the appropriate standard is to require proof beyond a reasonable doubt. This presents a question of law over which we exercise free review.

Idaho Code § 37–2744 provides that forfeiture proceedings are civil actions against the property subject to forfeiture which are governed by the Idaho Rules of Civil Procedure, and that the standard of proof applied is the preponderance of the evidence. I.C. § 37–2744(d); I.C. 37–2744(d)(2). The statute provides for the forfeiture of

All moneys, [or] currency ... found in close proximity to property described in paragraphs (1), (2), (3), (5), (7) or (8) of subsection (a) of this section or which has been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of property described in paragraphs (1), (2), (3), (7), or (8) of subsection (a) of this section.

I.C. § 37–2744(a)(6)(A). Paragraph (1) of subsection (a) includes

All controlled substances which have been manufactured, distributed, dispensed, acquired, possessed or held in violation of this act or with respect to which there has been any act by any person in violation of this act.

When applying I.C. § 37–2744, the trial court required that the state show by a preponderance of evidence that the seized money was used in a manner that violated the statute. The court stated

The forfeiture statute explicitly adopts a preponderance of evidence standard. While this is substantially more rigorous than the "probable cause" standards applied in federal forfeiture proceedings, 21 U.S.C.A. 881(a)(6), the Court is troubled by the use of a civil standard of proof in proceedings which are clearly penal in nature. Indeed, the state would not have prevailed in this proceeding had it been required to prove its case by "clear and convincing evidence," or "beyond a reasonable doubt." However, the legislature has spoken on this issue, and the court is not persuaded that it can ignore the statutory directive of I.C. 37–2744.

We, too, cannot ignore the directive of I.C. § 37–2744. Established case law indicates that a majority of states have adopted and upheld an evidentiary standard below reasonable doubt in civil forfeiture proceedings, and that most have adopted a preponderance of evidence standard. *See State v. Spooner,* 520 So.2d 336, 360 (La.1988). Also, we note that the standard Idaho imposes is more stringent than the finding of probable cause required in forfeiture proceedings under federal law. *See* 21 U.S.C. § 881(a)(6); 19 U.S.C. § 1615; *United States v. $250,000 in United States Currency,* 808 F.2d 895, 900 (1st Cir.1987).

Nevertheless, Rodriguez argues that the court should apply a reasonable doubt stan-

dard as was done in *State v. Manuel*, 426 So.2d 140 (La.1983). He claims support for his position can be found in *Spooner*, 520 So.2d at 336. We are not persuaded. *Manuel* imposed the greater standard of proof based on unique provisions of the Louisiana Constitution and the perception that a forfeiture is penal in nature. The history of civil forfeitures has been set out elsewhere and need not be extensively discussed. *See Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 682, 94 S.Ct. 2080, 2091, 40 L.Ed.2d 452 (1974); *Commonwealth v. One 1988 Ford Coupe*, 393 Pa.Super. 320, 574 A.2d 631, 636 (1990). Those histories reflect that, even though a forfeiture is in some ways penal in nature, deterrent qualities are incorporated as well. In fact, "forfeiture" has been defined as the taking of property without compensation, because of an offense, when the taking has been "deemed necessary by the legislature to restrain the commission of the offense and to aid in its prevention." 36 AM.JUR.2D *Forfeiture*, § 1, p. 611 (1968). The deterrent effect of the actions is largely due to their characterization as civil proceedings *in rem* against the property to be seized. 36 AM.JUR.2D *Forfeiture*, § 17, p. 623 (1968); *Spooner*, 520 So.2d at 357; *One 1988 Ford Coupe*, 574 A.2d at 636. Forfeiture statutes impose an economic penalty by rendering the illegal behavior unprofitable, and deterring such behavior by preventing further illegal use of the property. *Spooner*, 520 So.2d at 357, *citing Calero–Toledo*, 416 U.S. at 686–87, 94 S.Ct. at 2093–94. Also, an accurate reading of *Spooner* reveals that the court refused to reach the standard of proof issue in that case. Instead, the court noted that there was "divided sentiment" within the court as to what standard should apply and that the case did "not present the appropriate vehicle for the resolution of that issue." *Spooner*, 520 So.2d at 339.

In conclusion, we hold that the court properly applied the preponderance of evidence standard.

### Opinion on Ultimate Issue

Next, Rodriguez argues that the court erred when it allowed Special Agent George Phillips to opine that the money was "most likely the proceeds of drug trafficking." He asserts that attempting to qualify Agent Phillips as an expert in the field of drug trafficking, so that he could render his opinion, was erroneous because of the penal qualities of the proceeding and because it is improper to qualify a police officer as an expert based merely on the fact that "he deals in crimes of that kind." Rodriguez asserts that "Forfeiture cases and testimony of this kind are so similar to criminal cases that this type of evidence ought not to be allowed even under the current authority of Rule 704."

█ A witness qualified as an expert by knowledge, skill, experience, training or education may testify to the significance of certain facts if his testimony will assist the trier of fact. I.R.E. 702. His opinion may be based on facts or data known to him at or before the hearing. I.R.E. 703. An expert's opinion, if otherwise admissible, "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." I.R.E. 704. Whether to admit expert testimony is a matter left to the court's discretion and the court's decision will not be disturbed absent an abuse of discretion. *State v. Hopkins*, 113 Idaho 679, 680–81, 747 P.2d 88, 89–90 (Ct.App. 1987), *citing Sidwell v. William Prym, Inc.*, 112 Idaho 76, 730 P.2d 996 (1986). Once the testimony is admitted, the trier of fact determines the weight to attribute to it. *Id.*

At the beginning of his testimony, Agent Phillips was qualified as an expert in narcotics trafficking. He testified that he had been a police officer for approximately thirteen years, the most recent two and three-quarter years being spent as a special agent with the narcotics bureau of the Department of Law Enforcement. He had attended several training schools conducted by the Drug Enforcement Administration and other agencies concerning the use and distribution of controlled substances and investigation into those types of cases. He stated that he had been involved in over 200 narcotics investigations in his career as

a police officer, including 75 cases involving the purchase or seizure of marijuana.

Agent Phillips testified that based on his experience, drug transactions almost invariably involve the use of large quantities of cash, bundled into $1,000 or $10,000 groups to simplify counting. However, the money is wrapped in groups of bills of various denominations, unlike a bank which groups the money according to single denominations. He also testified that drug trafficking in the Idaho and Montana areas typically involves the transportation of marijuana or cocaine from southern border towns such as Brownsville, Texas or Nogales, Arizona, the latter located sixty miles south of Tucson, where Rodriguez lives. He stated that the drugs are typically transported north, while the proceeds from the sale are transported south to the source cities. He stated that rental cars are commonly used so that the traffickers do not risk forfeiture of their personal vehicles and that travelling is usually done during times of day or night when the chances of being caught are reduced. He also testified that when he opened the nylon bag when executing the warrant, he noticed a moderate odor of marijuana. Ultimately, he opined that the $34,000 "was most likely the proceeds of drug trafficking."

Rodriguez suggests that police officers cannot testify as experts in proceedings in which the subject matter corresponds to their areas of enforcement. We find this argument to be without merit. An expert is not restricted by the source of his knowledge, so long as the source produced a reliable foundation for testimony that presented information beyond the ken of the average trier of fact. Once the court exercised its discretion and determined that Agent Phillips was qualified to testify to the similarities between Rodriguez' actions and those of drug dealers, it was up to the court, as the trier of fact, to weigh the evidence. Other states have reached similar conclusions in forfeiture cases in which a police officer was allowed to testify as an expert: *Tucker v. State*, 445 So.2d 311 (Ala.App.1984) (identification

of marijuana); *People v. 1984 BMW 528E Automobile*, 208 Ill.App.3d 930, 153 Ill. Dec. 696, 567 N.E.2d 654 (1991) (opinion that marijuana was held with intent to deliver); *State v. Dykes*, 471 N.W.2d 846 (Iowa 1991) (opinion that evidence indicated the selling of drugs); *Commonwealth v. Griffin*, 595 A.2d 101 (Pa.Super.1991) (opinion that drugs were sold from residence); *City of St. Paul v. Various Items of Drug Paraphernalia*, 474 N.W.2d 413 (Minn. App.1991) (use of drug-cutting agents). Therefore, we hold that the court properly followed I.R.E. 704 when it allowed Agent Phillips to rendered his opinion.

### Findings of Facts and Conclusions of Law

Rodriguez also claims the court erred when it concluded that his adjusted gross income for the year equaled the amount he would have had available to spend and that the amount was far less than $34,000. In other words, the court concluded that Rodriguez' attempts to explain a lawful source for the money were unpersuasive.

When a trial court's findings of fact are challenged on appeal, the appellant has the burden of showing error, and the reviewing court will review the evidence in a light most favorable to the respondent. *Muniz v. Schrader*, 115 Idaho 497, 767 P.2d 1272 (Ct.App.1989). A court on appeal will not weigh the evidence when reviewing a finding of fact; rather, the appellate court inquires whether the finding is supported by substantial and competent, although conflicting, evidence. *Id.* If it is so supported, the factual finding cannot be deemed clearly erroneous and will not be disturbed on appeal. *Id.;* I.R.C.P. 52(a). Furthermore, in reviewing the trial court's conclusions of law, we determine whether the court properly applied the law to the facts as found. *Bischoff v. Quong–Watkins Properties*, 113 Idaho 826, 748 P.2d 410 (Ct.App.1987).

The forfeiture in this case was based entirely on circumstantial evidence. No drugs were found and Rodriguez was not charged with any crime involving controlled substances. However, the fact that no drugs were found is not dispositive.

When reviewing the record we look to the aggregate of facts, not the presence or absence of one factor. *United States v. U.S. Currency, $83,310.78*, 851 F.2d 1231, 1235 (9th Cir.1988), *citing United States v. $5,644,540.00 in U.S. Currency*, 799 F.2d 1357, 1363 (9th Cir.1986). We also note that a criminal conviction of the person is not required in order to proceed with a forfeiture of the associated property. *See* 36 AM.JUR.2D *Forfeiture* § 17, p. 623 (1968). Violation of the statute is civil wrong attached to the property, not to the person. *Id.*

Rodriguez testified that he had driven to Montana from Tucson, Arizona, to purchase a speedboat and a Corvette. He also stated that he needed the cash on-hand and did not use banks. He testified, however, that the boat was gone by the time he arrived and the Corvette was unavailable because its owner had been arrested. Unfortunately, he did not attempt to corroborate his testimony with any documentary evidence or by live or deposition testimony.

He testified that he had earned the $34,000 during 1989 by purchasing, repairing, and selling several cars and trucks. To support his claim he recounted some of the vehicles bought and sold and produced several informal receipts: for $7,000 received for a 1968 Corvette sold in January, 1989; for $7,000 received towards the $15,000 purchase price for a Winnebago in June, 1989; for $6,500 received for a 1969 Ford Mustang Cobra in March, 1989; and a receipt from Vintage Vettes in Tucson for $5,000 in credit for repair work based on a Corvette exchange. He testified that he actually made more money than was reflected in the receipts; for instance, he claimed that the Vintage Vettes transaction netted him $13,000, that he also sold a Nissan truck, and that he received $13,000 or $15,000 from the sale of the Winnebago. Rodriguez testified to other transactions, but produced no evidence supporting his claims beyond the receipts already described. By comparison, the state presented documentation from the Arizona Department of Transportation that at least one of the vehicles Rodriguez reportedly bought and sold had been titled in the name of Carl Loganbach since May, 1986. While Rodriguez testified that he had purchased the vehicle from Mr. Loganbach, he could not explain why his purchase and resale were not reflected in the Department of Transportation's records.

Rodriguez also produced his income tax returns for 1988 and 1989 in an attempt to support his claims. However, the trial court found that the returns painted a different picture. His 1988 tax form showed an adjusted gross income of $1,556. His 1989 tax return, filed six months after the seizure, indicates an adjusted gross income of $25,108. This income was generated exclusively from the sale of four automobiles which were reported as capital gains. Rodriguez claims that several transactions were not recorded, however, and that he actually made $40,500 in 1989. He argues that after deducting his living expenses, his income was just under $34,000.

However, Rodriguez' self-estimated living expenses of $750 per month equaled $6,705 for nine months. (He stated that he was in jail for a D.U.I. for the first three months of the year.) He testified to paying $4,703 for business expenses associated with T & R Automotive, and Schedule D of his tax form indicates that three of the vehicles allegedly sold cost a total of $10,844. Adding these rough costs together and subtracting them from the claimed income of $40,500 nets a sum of $18,248. The court stated that giving Rodriguez the benefit of the doubt, "his reported income for the two years prior to the seizure could justify no more than one-half of the amount of cash involved in this forfeiture." We find the court's conclusion to be supported by the evidence and thus not clearly erroneous.

### Evidence of Prior Marijuana Offense

█ The record shows that Rodriguez had, in 1985, been charged in Arizona with possession of marijuana for sale. Rodriguez asserts that it was error for the court to consider this information, contained in Exhibit 8, because the exhibit was rejected by the court at trial. The court stated in its findings of fact that

The evidence at trial established that the claimant was indicted in April of 1985 by a grand jury on charges of unlawful possession of marijuana and unlawful possession of marijuana for sale. Pursuant to a plea bargain agreement, the claimant pled guilty on October 30, 1985 to a single count of unlawful possession of marijuana.

However, Rodriguez testified on direct examination that he had been convicted of possession of marijuana in September of 1985, and that he successfully completed his probation. He then corrected himself and stated that "I think that was possession of marijuana for sale. I think it was dropped to possession of marijuana. I don't know. It's been forever." We find that if the court wrongly considered information not admitted in evidence, the error was harmless because Rodriguez essentially provided the same information in his testimony. I.R.C.P. 61.

### Conclusion

The inventory search in this case was proper, the court applied the correct standard of proof, and the expert's opinion testimony was properly admitted. Further, the court's findings and conclusions regarding the source of the money were not clearly erroneous. Although no single fact supports the forfeiture, the trial court found the combination of all of the facts persuasive. The mere possession of a large amount of cash is strong evidence that the money was furnished or intended to be furnished in return for drugs, even if the money is not found in close proximity to a controlled substance. *United States v. U.S. Currency, $83,310.78,* 851 F.2d at 1236, *citing United States v. $93,685.61 in U.S. Currency,* 730 F.2d 571, 572 (9th Cir.), *cert. denied sub nom. Willis v. United States,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984). The evidence showed that Rodriguez' southbound travel late at night in a car rented to an absent third party is characteristic of drug traffickers. The brevity of his trip, his inability to support his assertions with corroborating evidence, his target cities, and the fact that his substantiated licit income was not large

enough to account for the cash are also persuasive. Further, Rodriguez has previously bargained a charge of possession of marijuana for sale down to possession of marijuana. In addition, the fact that the dog detected the scent of a marijuana, cocaine, or heroin on the money supports the forfeiture. *See In Re Forfeiture of $62,-200 in United States Currency,* 531 So.2d 352 (Fla.App.1988) (small quantity of drugs found created mere suspicion, but alert on money in trunk by narcotics dog plus inconsistent statements about money's source allowed forfeiture). Based on the foregoing, we affirm the judgment of the district court.

Costs to respondent, Department of Law Enforcement. No attorney fees allowed on appeal.

SILAK, J., and BAIL, J. Pro Tem., concur.