910 P.2d 766

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Walter WEAVER, Defendant–Appellant.**

No. 20504.

Court of Appeals of Idaho.

Oct. 17, 1994.

Jonathan B. Hull, Kootenai County Public Defender, Coeur d'Alene, for appellant.

Larry EchoHawk, Atty. Gen.; Myrna A.I. Stahman, Deputy Atty. Gen., argued, Boise, for respondent.

LANSING, Judge.

This is an appeal from the denial of a motion to suppress as evidence a handgun found when law enforcement officers conducted an inventory search of an automobile in connection with the automobile's impoundment. The impoundment was ordered following the arrest of the driver, Walter Weaver (Weaver) on a Pennsylvania warrant. Weaver contends that the impoundment and inventory of the automobile were unreasonable and violative of his Fourth Amendment rights because the vehicle could have been driven away by Weaver's mother, who was a passenger and the owner of the vehicle. Because we conclude it was permissible for the officers to impound the automobile based upon their reasonable determination that Weaver's mother was physically incapable of driving, we affirm the order denying the motion to suppress.

## I.

### FACTS

Testimony at the hearing on Weaver's suppression motion indicates the following. The Weaver family came to the attention of the Kootenai County sheriff's department in the fall of 1992, when Weaver's brother, Bob Weaver, took his wife, Charlotte, hostage during a domestic dispute. Sheriff's department personnel eventually killed Bob during the standoff. A few days after that incident, Charlotte contacted Sergeant Sopher at the sheriff's department about information she had received from members of Bob's family. They had informed Charlotte that Walter Weaver and his mother, Pearl Weaver, were on their way to Idaho to kill Charlotte in retaliation for Bob's death. They said that Pearl possessed a gun. Charlotte conveyed this information to Sergeant Sopher and gave him a description of the car in which Weaver and Pearl were travelling. Sopher contacted Pennsylvania authorities who informed him that Weaver was on parole from a burglary conviction and was in violation of parole terms for failing to maintain contact with his parole officer.

On October 1, 1992, Sopher received a warrant for Weaver's arrest from the State of Pennsylvania. On the same day Sopher received a telephone call from the Idaho State Patrol informing him that Weaver was at that moment standing in the State Patrol offices. Weaver was asking the location of Bob's remains and the address of Charlotte Weaver. Sopher requested that the State Patrol officer, under the guise of giving directions to Charlotte's house, direct Weaver to the Kootenai County sheriff's office. The State Patrol officer complied. Weaver and Pearl left, believing they were on their way to Charlotte's home, but actually driving toward the sheriff's office.

Their vehicle was stopped en route by Kootenai County sheriff's deputies. Weaver was removed from the vehicle and arrested on the Pennsylvania warrant. Pearl, who was over seventy years of age, was also removed from the car and placed in the rear seat of a patrol car for her comfort. Sergeant Sopher then ordered a deputy to inventory the vehicle. The deputy, using a standard sheriff's department inventory form, began searching the automobile and listing the items found. He discovered a handgun under the spare tire in the trunk of the vehicle. A telexed inquiry to the National Crime Information Center yielded information that the gun was stolen. The officer then arrested Pearl at the scene apparently

for grand theft by possession of stolen property.[1]

On the basis of the handgun found in the automobile, Weaver was subsequently charged with unlawful possession of a firearm by a felon, I.C. § 18-3316, and grand theft by possession of stolen property, I.C. §§ 18-2403(4), 18-2407(1). He filed a motion to suppress the gun as evidence, contending that the warrantless search of the automobile was impermissible. The trial court denied the motion and held that the search was a valid inventory following impoundment of the automobile. Weaver then entered a conditional plea of guilty to the charge of unlawful possession of a firearm by a felon, reserving the right to appeal the denial of his motion to suppress. The grand theft charge against Weaver was dismissed.

On appeal, Weaver argues that the impoundment was unreasonable and violative of the Fourth Amendment because Pearl, the owner of the car and a licensed driver, was present at the scene and could have taken custody of the vehicle. Because the impoundment order was unlawful, he contends, the inventory search was impermissible and any evidence discovered in the process should have been suppressed. The State counters that Sergeant Sopher reasonably believed that Pearl was incapable of driving the vehicle after observing that she was physically infirm as she exited the vehicle and walked to the patrol car. Accordingly, the State asserts, the decision to impound the vehicle was reasonable under the circumstances and the evidence yielded by the inventory search was admissible.

## II.

## ANALYSIS

 Motions to suppress evidence are reviewed under a bifurcated standard. While we accept the district court's findings of fact unless clearly erroneous, we freely review the application of the law to the facts found. *State v. Culbertson,* 105 Idaho 128, 666 P.2d 1139 (1983); *State v. Shepherd,* 118 Idaho 121, 795 P.2d 15 (Ct.App.1990). Where, as here, the State conducts a search without a warrant, a presumption arises that

the search is *per se* unreasonable. *State v. Huskey,* 106 Idaho 91, 675 P.2d 351 (Ct.App. 1984). The burden of proof is thus shifted to the State to demonstrate that the search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *State v. Woolery,* 116 Idaho 368, 775 P.2d 1210 (1989); *State v. Bottelson,* 102 Idaho 90, 625 P.2d 1093 (1981); *State v. Limberhand,* 117 Idaho 456, 788 P.2d 857 (Ct.App.1990).

 When the police have lawfully impounded an automobile in carrying out their community caretaking function, they are permitted to inventory its contents. Such warrantless inventory searches, when conducted in compliance with standard police procedures and not as a pretext for criminal investigation, do not offend Fourth Amendment strictures against unreasonable searches and seizures. *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Smith,* 120 Idaho 77, 80-81, 813 P.2d 888, 891-92 (1991); *State v. Bray,* 122 Idaho 375, 834 P.2d 892 (Ct.App.1992), *cert. denied* 507 U.S. 916, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993); *Department of Law Enforcement v. $34,000 U.S. Currency,* 121 Idaho 211, 214-15, 824 P.2d 142, 145-46 (Ct.App.1991). An inventory following impoundment is a reasonable and legitimate means to safeguard the owner's property, to prevent claims against the police for lost or stolen property, and to protect the police and others from dangerous instrumentalities that may be inside the vehicle. *Bertine,* 479 U.S. at 372-73, 107 S.Ct. at 741-42; *Opperman,* 428 U.S. at 369-71, 96 S.Ct. at 3097-98. *Smith,* 120 Idaho at 80, 813 P.2d at 891. However, the impoundment itself must be lawful. An impoundment of a vehicle constitutes a seizure and is thus subject to the limitations of the Fourth Amendment. If the impoundment violates the Fourth Amendment, the accompanying inventory is also tainted, and evidence found in the search must be suppressed. *State v. Teeter,* 249 Kan. 548, 819 P.2d 651, 653 (1991); *State v. Anderson,* 377 So.2d 837, 838

---

1. The charge against Pearl was subsequently dismissed.

(La.1979); *People v. Toohey*, 438 Mich. 265, 475 N.W.2d 16, 25 (1991); *Lee v. State*, 628 P.2d 1172 (Okla.Crim.App.1981); *State v. Smith*, 72 Or.App. 130, 694 P.2d 1013 (1985).

■ In order to comport with the Fourth Amendment prohibition against unreasonable seizures, an impoundment must be reasonable under all the circumstances known to the police when the decision to impound was made. *Opperman*, 428 U.S. at 372–73, 96 S.Ct. at 3098–99; *Teeter*, 819 P.2d at 653–54; *Starks v. State*, 696 P.2d 1041 (Okla.Crim. App.1985); *State v. Hygh*, 711 P.2d 264, 268 (Utah 1985); *State v. Thompson*, 24 Wash. App. 321, 601 P.2d 1284, 1287 (1979). Our decisions establish that an impoundment is reasonable if it is necessary to protect the automobile from possible damage or theft, to avoid a risk to the travelling public, or to prevent an obstruction of normal traffic flow which would arise if the vehicle were left on or near the roadway. *Bray*, 122 Idaho at 378, 834 P.2d at 895; *Smith*, 120 Idaho at 80–81, 813 P.2d at 891–92.[2]

■ At the hearing on Weaver's motion to suppress, officers testified that the vehicle created a traffic hazard because it was parked partially within the traffic lane on a two-lane street. Further, because Weaver was being arrested on the Pennsylvania warrant for parole violations, it would not be possible for him to quickly return and move the vehicle to a safe and secure location. Weaver maintains that the impoundment was nonetheless unnecessary and unreasonable because the automobile could have been turned over to Pearl.

A number of jurisdictions have held that where the arrested driver can make alternative arrangements for the car to be taken by a friend or relative, or where such alternatives are readily apparent to the officer, the officer may not impound the vehicle. *See generally,* WAYNE R. LAFAVE, SEARCH AND SEIZURE § 7.3(c) p. 89–90 (1987) and cases cited therein. Thus, where the driver has been arrested but there is present a passenger who is authorized to drive the vehicle, impoundment has been found unreasonable. *State v. Volk*, 291 So.2d 643 (Fla. Ct.App.1974); *People v. Velleff*, 94 Ill.App.3d 820, 50 Ill.Dec. 222, 419 N.E.2d 89 (1981); *State v. Boster*, 217 Kan. 618, 539 P.2d 294 (1975), *overruled on other grounds, State v. Fortune*, 236 Kan. 248, 689 P.2d 1196 (1984); *State v. Anderson*, 377 So.2d 837 (La.1979); *State v. Bales*, 15 Wash.App. 834, 552 P.2d 688 (1976). On the other hand, the United States Supreme Court has stated that, "The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Bertine*, 479 U.S. at 374, 107 S.Ct. at 742, *quoting Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983).

Idaho courts have not expressly addressed this question, but our prior decisions suggest that the unavailability of any other person who could take custody of the vehicle with the arrested or disabled driver's permission is, at the least, a factor to be considered in determining the reasonableness of an impoundment. In *Department of Law Enforcement v. $34,000 U.S. Currency*, 121 Idaho at 215, 824 P.2d at 146, the State Police arrested a driver on an interstate highway late at

2. Idaho Code § 49–662(3)(c) authorizes impoundment of a vehicle when the person driving or in control of the vehicle is arrested for an offense requiring an appearance before a magistrate. At the hearing on Weaver's motion to suppress evidence, the State did not rely upon this statute as authorization for the impoundment. To the contrary, Sergeant Sopher indicated that even though the driver had been arrested, it would have been against the policy of the sheriff's department to impound the vehicle if the officers had known that Pearl was licensed and physically capable of taking control of the vehicle. Even if the State had based the impoundment upon § 49–662, however, the constitutional question presented here would remain. The au-

thorization of impoundment by a state statute does not establish compliance with Fourth Amendment limitations. *See Opperman*, 428 U.S. at 372, 96 S.Ct. at 3098 (noting that the inquiry is not whether the search was authorized by state law but whether it was reasonable under the Fourth Amendment); *Cooper v. California*, 386 U.S. 58, 61, 87 S.Ct. 788, 790, 17 L.Ed.2d 730 (1967) (same). Because we conclude that the impoundment here was permissible without reference to § 49–662, we need not address whether that statute could be constitutionally applied to authorize impoundment when other licensed persons are available to take custody of the automobile for the arrested driver.

night. Officers testified that for the safety of the travelling public, they were not allowed to leave the automobile on the highway. In concluding that impoundment of the vehicle was proper, we observed that although the arrestee had a passenger who was not taken into custody, the passenger could not legally take the automobile because she was not an authorized driver under terms of the rental agreement covering the vehicle. *See also Bray,* 122 Idaho at 378, 834 P.2d at 895, (noting that although the injured motorcycle owner asked police to leave the motorcycle beside the road and said that friends were coming to pick it up, during the two and one-half hours the police were at the scene of the accident no one associated with the owner came to pick up the motorcycle).

In the present case, Weaver relies on Sergeant Sopher's testimony that it would have been contrary to the sheriff department's policy to impound the vehicle if the officers had been aware that Pearl owned the car, had a valid driver's license and was physically capable of driving. Weaver contends that the officers were aware of those facts before the gun was found. The finding of the district court, however, was to the contrary. The district court found that, "right to the end [the law enforcement officers] were under the impression that Pearl, even though she had a valid license that they checked out, was not capable of driving."

This finding of the district court was predicated upon the following evidence. Sergeant Sopher testified that he ordered impoundment of the vehicle and directed a deputy to inventory the car pursuant to the sheriff department's policy. Sopher stated that his reasons for doing so were that Weaver, the driver, had been arrested, and Pearl, the passenger, did not appear capable of driving. He based this conclusion upon his observation of Pearl as she exited the vehicle and was led to a patrol car. Sopher testified that Pearl staggered and was not steady on her feet. He said she appeared to be very elderly and needed assistance when she exited the vehicle and walked away. In view of these observations, he concluded that he could not safely turn the vehicle over to Pearl.

After Sopher ordered the inventory search, another officer informed him that there was an object on Pearl's hip that appeared to be some sort of drug injection device. Sopher then went to look at the device, and Pearl explained that it was an electrical muscle stimulator for treatment of back pain. Sergeant Sopher testified that he talked several minutes with Pearl, and during the course of this conversation he became aware that she was a licensed driver, that the automobile was hers, and that she claimed to be capable of driving it. However, Sopher testified that the officer inventorying the automobile's contents found the handgun before Sopher learned that Pearl was able to take custody of the vehicle. Although there is contradictory evidence suggesting that Sopher's conversation with Pearl occurred before discovery of the gun in the trunk of the automobile, Sopher's testimony supports the district court's finding that Sopher and the other officers were acting under a reasonable belief that Pearl was incapable of driving the vehicle until some time after the gun was discovered.

In view of this finding, and the evidence upon which it is based, we conclude that Sergeant Sopher's decision to impound the automobile was reasonable when made and that the impoundment had not become impermissible at the point when the weapon was found. Assuming, without deciding, that the availability of another licensed driver who could take the automobile for an arrestee would make an impoundment and inventory constitutionally impermissible, such limitation did not apply here because the officers reasonably believed that Pearl was physically unfit to operate the vehicle until sometime after the discovery of the weapon. Weaver's *motion to suppress therefore was properly denied.*

The order of the district court denying Weaver's motion to suppress the gun found during the search of the vehicle is affirmed.

WALTERS, C.J., and PERRY, J., concur.