813 P.2d 888

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Victor H. SMITH, Defendant–Appellant.**

**No. 18543.**

Supreme Court of Idaho,
Lewiston, April 1991 Term.

June 28, 1991.

Clark & Feeney, Lewiston, for defendant-appellant. Charles M. Stroschein argued.

Larry J. EchoHawk, Atty. Gen., Michael J. Kane, Deputy Atty. Gen., Boise, for plaintiff-respondent. Michael J. Kane argued.

McDEVITT, Justice.

On July 3, 1989, Officer Ted Piche of the Lewiston Police Department stopped a 1966 Ford Galaxy driven by Victor H. Smith for speeding and driving erratically. As Officer Piche approached the car he observed Smith reaching under the seat as if to either hide or retrieve something. The officer told Smith to keep his hands in plain sight and ordered him out of the car. When asked why he was reaching under the seat, Smith replied that there was a loaded gun in the car. He was immediately handcuffed and the officer called for backup.

After Officer Cain responded to the call for back up, Piche made a cursory search of the vehicle and located a loaded .25 caliber automatic handgun under the front seat of the car. Smith was searched and arrested for carrying a concealed weapon. When questioned about ownership of the vehicle, Smith said that the car belonged to a friend and that he was borrowing it for a few days. However, when the officers ran a registration check, it showed that the vehicle was registered both to the defendant and to a Mr. Cook. At this point, the officers suspected that the car may have been stolen and began looking for the Ve-

hicle Identification Number (VIN) plate. Upon locating the VIN plate it appeared to the officers that it may have been tampered with.

The officers made the decision to have the vehicle impounded, both for auto theft investigation and to remove it from the highway for safety reasons. During an inventory search a clear plastic bag containing white powder was discovered under the seat cover in the middle of the front seat. This bag contained what was later determined to be 25.4 grams of cocaine.

Following a preliminary hearing, the defendant was bound over to the district court for trial on the charges of possession of a controlled substance with intent to deliver and failure to affix controlled substance tax stamps to the cocaine.

The defendant filed a motion to suppress the evidence found in his vehicle, and a motion to dismiss the tax stamp charge on the basis that the statute was unconstitutional.

The court ruled that the cocaine charge would be amended to simple possession and denied the motions to suppress the evidence and to dismiss the drug tax stamp count. The defendant entered a conditional plea of guilty under Rule 11 of the Idaho Criminal Rules reserving the right to appeal these decisions. The court withheld judgment on both counts and placed Smith on probation.

## ILLEGAL DRUG STAMP CHARGE

The first issue we will deal with is the denial of the motion to dismiss the tax stamp charge on the basis that the statute is unconstitutional.

The Illegal Drug Stamp Tax Act was enacted in 1989, and was later amended in 1990. This Act requires those unlawfully in possession of controlled substances to purchase and affix drug tax stamps to the substances or face civil and criminal penalties. The defendant was charged un-

der the 1989 version, and asserts that this version was unconstitutional because it violated his right against self-incrimination.[1] At oral argument the State acknowledged that, as to its criminal provisions, the Act was unconstitutional as it was violative of the Fifth Amendment because it failed to provide the functional equivalent of a guarantee against self-incrimination. We agree.

Under the 1989 version, although a purchaser of drug stamps was not required to give identifying information when paying the tax, there was no penalty for disclosure of information by tax commission employees or agents, and there was no express prohibition against using the information obtained through the purchase of the stamps in criminal proceedings or investigations. The most significant change in the Illegal Drug Stamp Tax Act made in the 1990 version was the addition of I.C. § 63–4206 which provides for confidentiality for stamp purchasers. Idaho Code § 63–4206 provides penalties for those who would divulge this information, and prohibits using it in criminal investigations or proceedings. This addition cures the deficiencies challenged by the defendant. Other states have held similarly.[2]

The defendant's conviction for failure to purchase and affix a drug stamp under the 1989 version of the Illegal Drug Stamp Tax Act is vacated.

## MOTION TO SUPPRESS

The next issue we confront is whether the district court abused its discretion in denying the defendant's motion to suppress evidence found in the vehicle. The evidence in question is the 25.4 grams of cocaine found during the inventory search conducted by Officer Cain.

The defendant contends that the inventory search was a pretext for an "investigative" search. Although we are unable to discern the subjective intent of the officers involved in this case, or any other, the law

---

1. In the 1990 amendment the legislature addresses the issue of the individual's right against self-incrimination.

2. *State v. Durrant,* 244 Kan. 522, 769 P.2d 1174 (1989); *Sisson v. Triplett,* 428 N.W.2d 565 (Minn.1988).

provides for both a search of an arrestee's vehicle following a valid arrest, and also for an inventory search upon the impoundment of a vehicle. It is apparent from the facts of this case that both types of searches occurred here. We will address each search separately.

## SEARCH INCIDENT TO ARREST

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court clarified the rule of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and stated:

> Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
>
> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

*New York v. Belton*, 453 U.S. at 460–61, 101 S.Ct. at 2864. (Citations and footnotes omitted).

■ Idaho has adopted the rule in *Belton*. *State v. Calegar*, 104 Idaho 526, 661 P.2d 311 (1983). Here, the officers were justified in searching the interior of the automobile, including any containers, as soon as the defendant was placed under arrest. The officer searched the automobile after the defendant was arrested, and while the car was still at the scene of the arrest. Thus, this was a valid search incident to arrest.

■ In *State v. Calegar*, 104 Idaho 526, 661 P.2d 311 (1983), we held that a suitcase seized from the defendant's automobile, could be taken back to the station before the search of the suitcase was conducted. A delay of a half hour, as in this case, does not result in an invalid search. The United States Supreme Court has held similarly. *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

## INVENTORY SEARCH

In addition, it was permissible for the police to search the defendant's car once the decision was made to impound it.

■ Inventory searches are permissible. The United States Supreme Court, in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), stated:

> When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger.
>
> \*    \*    \*    \*    \*    \*
>
> The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable.

*Id.*, 428 U.S. at 369–72, 96 S.Ct. at 3097–99. (Citations omitted).

■ The initial decision to impound a vehicle that poses a traffic hazard or following the operator's arrest is left to the discretion of the officer involved. The defendant's car was on an incline at the interchange of U.S. Highways 12 and 95 facing north. This is an area with heavy traffic and no shoulder on the side of the road. The speed limit is forty-five miles per hour at that point, but it is close to the fifty-five miles per hour marker.

At the preliminary hearing, Officer Cain testified that he decided to impound the vehicle so it could be investigated by officers more familiar with auto theft investi-

gations. He also testified that the location of the vehicle necessitated removing it, both for the safety of the vehicle and the other traffic on the highway. Officer Cain testified that even if he had not suspected that the vehicle was stolen, he still would have impounded it because it was a traffic hazard.

Therefore, we hold that the district court did not abuse its discretion in denying the defendant's motion to suppress. The defendant's conviction on the charge of possession of a controlled substance is affirmed. The defendant's conviction for failure to purchase and affix a drug stamp under the 1989 version of the Illegal Drug Stamp Tax Act is vacated.

JOHNSON, J., concurs.

BOYLE, J., concurs in result.

BAKES, Chief Justice, concurring specially:

I concur in all of the Court's opinion except that portion dealing with the illegal drug stamp charge. Since the State has acquiesced in the dismissal of that tax count, we should not engage in any constitutional analysis or disposition. It is sufficient merely to acknowledge the State's acquiescence and order the dismissal.

BISTLINE, Justice, concurring in part, and dissenting in part.

I concur with the vacating of the defendant's conviction under the Illegal Drug Stamp Tax Act and the holding that the 1989 version of the act is unconstitutional. I dissent from the affirmance of the district court's denial of the defendant's motion to suppress the evidence found in the vehicle. Likewise I dissent from the affirmance of the conviction on the charge of possession of a controlled substance.

The fourth amendment to the United States Constitution and art. 1, § 17 of the Idaho Constitution protect the people of Idaho against unreasonable searches and seizures. "The essence of the prohibition against unreasonable searches and seizures is to 'safeguard the privacy and security of individuals against arbitrary invasions of governmental officials.'" *State v. Henderson*, 114 Idaho 293, 294, 756 P.2d 1057, 1058 (1988) (citations omitted). The fourth amendment and art. 1, § 17 allow for the exclusion of evidence that is obtained as a result of an illegal search or seizure. *Mapp v. Ohio*, 367 U.S. 643, 654–56, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961); *State v. Johnson*, 110 Idaho 516, 524, 716 P.2d 1288, 1296 (1986).

In the present case the defendant's car was searched without a warrant. "It is axiomatic that warrantless searches are *per se* unreasonable, and therefore unconstitutional, unless a specifically enumerated exception to this rule applies." *Johnson*, 110 Idaho at 522, 716 P.2d at 1294 (citations omitted). The majority holds that the search of the defendant's car in this case fell under the search incident to arrest and inventory search exceptions to the warrant requirement.

## THE SEARCH INCIDENT TO ARREST EXCEPTION

The justifications for the search-incident-to-arrest exception to the warrant requirement are:

(1) police officers when making a valid arrest need to secure their own safety by searching out and removing any weapons on the person of the arrestee, or within an area under his control, and (2) there is a need to search for and seize evidence that is located on the person of the arrestee or within his immediate control to prevent the destruction of that evidence. *See Chimel v. California* [395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)].

*State v. Calegar*, 104 Idaho 526, 529, 661 P.2d 311, 314 (1983). Neither of these justifications is present in this case. The search that turned up the cocaine occurred more than 30 minutes after the defendant was removed from the scene. Tr. Vol. I, 21. With the defendant thus long gone, the safety of the officers cannot reasonably be said to constitute a justification for searching the car without a warrant. Likewise, preventing the destruction of evidence cannot seriously be said to justify the warrantless search which was made.

No member of the Court has suggested how the defendant could destroy any evidence in the car after he had been whisked away from the scene.

*State v. Calegar*, 104 Idaho 526, 661 P.2d 311, dealt with the search incident to arrest exception in a factual context similar to that of present case. In *Calegar* a suitcase seized from the defendant's car at the time of the arrest was searched at the police station several hours later. Justice Huntley, dissenting, exposed the charade by which the majority distorted the search incident to the arrest exception to circumvent the fourth amendment:

The majority is correct that this area of criminal law is fraught with confusion. The majority is likewise correct in setting forth two justifications for allowing searches incident to an arrest, those being (1) to secure the safety of the police officers making the arrest, and (2) to prevent the destruction of evidence. However, neither of these justifications is present in this case. The suitcase was seized by the arresting officers, thereby precluding any possibility that the defendant might obtain a weapon from it or destroy the evidence it contained. The cases cited by the majority, including *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), all involved a search conducted at the scene of the arrest, i.e., 'incident to the arrest.' In the instant case, the search of the suitcase was conducted several hours later, purportedly with the defendant's consent. *Belton* concerned the ambiguity of what area is within the immediate control of the arrestee. The court held that 'when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a *contemporaneous* incident of that arrest, search the passenger compartment of that automobile.' 453 U.S. [at] 460, 101 S.Ct. [at] 2864, 69 L.Ed.2d [at] 775 (emphasis supplied). The court then reasoned that since the passenger compartment is within the reach of the arrestee, so also will the containers be within his reach. The holding of *Belton* is in keeping with the purpose behind this exception to the war-

rant requirement. In footnote 3, 101 S.Ct. [at] 2864, the court stated:

Our holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic content. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.

As stated above, the search in the instant case cannot be justified by either of those purposes. Additionally, for emphasis sake, the search here was not contemporaneous with the arrest; therefore it could not be 'incident to the lawful arrest.' The majority seems to recognize this argument when it includes the language of *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974):

It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention. If need be, *Abel v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), settled this question. There the defendant was arrested at his hotel, but the belongings taken with him to the place of detention were searched there. In sustaining the search, the Court noted that a valid search of the property could have been made at the place of arrest and perceived little difference

"when the accused decides to take the property with him, for the search of it to occur instead at the first place of detention when the accused arrives there...." 415 U.S. [at] 803, 94 S.Ct. [at] 1237, 39 L.Ed.2d [at] 775.

*Edwards* involved a search of defendant's clothing ten hours after his arrest. There was no substitute clothing available that late at night and as soon as substitute clothing was available it was provided. Additionally, the court noted that this was the standard practice in that city. The court stated '[t]his was no more than taking from respondent the effects in his immediate possession that

constituted evidence of crime.' It can logically be contended that because Edwards still had his clothing the evidence it contained could still be destroyed. In the instant case the suitcase was within the control of the police, there was no possibility that the evidence it contained would be destroyed, and it would have been of little inconvenience for the authorities to procure the required search warrant. The reasoning of the dissent in *Edwards* is a more correct statement of the law.

As the Court has repeatedly emphasized in the past, the most basic constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." *Coolidge v. New Hampshire*, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564; *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576. Since it is conceded here that the seizure of Edwards' clothing was not made pursuant to a warrant, the question becomes whether the Government has met its burden of showing that the circumstances of this seizure brought it within one of the "jealously and carefully drawn" exceptions to the warrant requirement.

The Court finds a warrant unnecessary in this case because of the custodial arrest of the respondent. It is, of course, well settled that the Fourth Amendment permits a warrantless search or seizure incident to a constitutionally valid custodial arrest. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. *But the mere fact of an arrest does not allow the police to engage in warrantless searches of unlimited geographic or temporal scope.* Rather, the search must be spatially limited to the person of the arrestee and the area within his reach, *Chimel v. California, supra,*

and must, as to time, be *"substantially contemporaneous with the arrest,"* *Stoner v. California*, 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856; *Preston v. United States*, 376 U.S. 364, 367–368, 84 S.Ct. 881, 11 L.Ed.2d 777.

The dissent then concluded that there was no justification for dispensing with the warrant requirement, the police had ample time to seek a warrant, and exigent circumstances were not present to excuse their failure to do so.

The search involved here was removed in time from the arrest, the suitcase was secured, and the police had ample time to procure a search warrant. Their failure to do so made the search 'unreasonable' under the fourth amendment to the United States Constitution, applicable to the states through the fourteenth amendment.

*Calegar*, 104 Idaho at 532–533, 661 P.2d at 317–18 (emphasis in original). Justice Huntley's analysis in *Calegar* remains relevant and forceful eight years later and again exposes the unreasoned assault on our fourth amendment protection against unreasonable searches and seizures.

## THE INVENTORY SEARCH EXCEPTION

Inventory searches made pursuant to standard police procedures have been held to be reasonable and not violative of the fourth amendment. *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976). In *South Dakota v. Opperman* the United States Supreme Court made it clear that "there [was] no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive." 428 U.S. at 376, 96 S.Ct. at 3100. Inventory searches are not reasonable if they are employed in bad faith or for the sole purpose of investigation. *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1978). In the present case the defendant asserts that the inventory search was a pretext for an investiga-

tive search, and supports his contention with ample evidence from the record.

The evidence of bad faith in conducting the "inventory search" begins with the Vehicle Identification Number (VIN) search. After the defendant was stopped, arrested, and a cursory search of the car was made, the police requested information on the ownership of the car. A check of the registration and title showed that Victor Smith and Carl Cook had a joint ownership in the car. The VIN numbers on the registration form from the car matched those VIN numbers on the door post and above the fire wall. The officers ran a check on the car, but there was no indication from this check that the car was stolen. Tr. Vol. I, 91. Nevertheless, Officer Cain began an extensive "VIN search." Officer Piche testified to Officer Cain's "VIN search" as follows:

A. He raised the hood, he opened the air cleaner, he checked around the lower parts of the engine, face plates on anything that would be—indicate any VIN numbers or any type of serial numbers on the dash or the fire—fire panel of the car.

Q. Did he tap the fenders?

A. Yes, he did.

Q. Do you tap fenders when you're searching for a VIN number?

A. Not normally.

Q. Do you open an air filter, air cleaner when you're looking for VIN numbers?

A. Not normally.

. . . .

Q. While you were present did officer Cain enter the interior of the car?

A. He did enter the interior of the car. . . .

Q. Did anyone while—did either you or Officer Cain open the trunk of this car?

A. I believe Officer Cain may have. I'm not sure.

Q. Is opening the trunk of a car part of a VIN search?

A. Not normally.

Tr. Vol. I, 82–83. A VIN is not going to be found by looking in the air cleaner, tapping the fenders or looking in the trunk. It is painfully obvious that the VIN search was a subterfuge for an investigative search. This "VIN search" suffices in and of itself to establish that the police were not acting in good faith when they then indulged in further searching and snooping, the purported "inventory search."

Conceded, an inventory search of a properly impounded vehicle is permissible. The majority states: "[t]he initial decision to impound a vehicle that poses a traffic hazard or following the operator's arrest is left to the discretion of the officer involved." At 80, 813 P.2d at 891. While an officer may have some discretion in this decision, an inventory search cannot be viewed as having been reasonably conducted when the purported reasons for impounding the vehicle are wholly barren of any realistic basis.

The majority naively accepts Officer Cain's reasons for impounding the defendant's vehicle, to wit, traffic safety and facilitation of an investigation for possible theft—this absurdity notwithstanding that defendant was the registered owner. However, Cain's testimony on the impoundment issue, along with that of Officer Piche, discloses that the traffic safety reason for impoundment was fabricated to justify the "inventory search." The appellant's brief reviews the testimony on impoundment:

The evidence regarding the reason for impoundment changed as time passed in this case. The location of the appellant's car suddenly became important to the State after it received defendant's brief in support of the motion to suppress. Officer Piche described at the Preliminary Hearing where defendant parked. He stated,

A: He proceeded on U.S. 12 towards the Lewiston Hill as if he was attempting to find a place to pull over on the side of the roadway which would be out of the traffic.

* * * * * *

Q: Did he pull over?

A: Yes, he did.

Transcript of Preliminary Hearing at pp. 15. (Emphasis added). There is no discussion that the car's location was a hazard. However, this suddenly changed. The State, in its brief, first argues the point of location of the vehicle.

Officer Piche testified at the Motion Hearing that Mr. Smith pulled off the highway 'not on the dirt. He was still on the asphalt.' Transcript Vol. 1 at p. 73.

The testimony from the Preliminary Hearing was in August, just a month after the arrest. Clearly Officer Piche's memory would have been more reliable when he testified that Mr. Smith pulled 'over on the side of the roadway which would be out of traffic.' This testimony would also be pure of any possible taint caused by discussion with the State's Prosecutor. Officer Cain testified that Mr. Smith stopped at an area on the highway with 'no shoulder.' Transcript Vol. 1 at p. 22.

This comment regarding 'shoulder' of the road is inconsistent with Officer Piche's testimony. Recall that Officer Piche stated that there was not only a shoulder but that there was an extension of asphalt and dirt. Officer Cain's testimony in November of 1989 not only contradicts officer Piche's testimony, it contradicts his own August, 1989, Preliminary Hearing testimony.

The State at the Preliminary Hearing asked Officer Cain where the car was located. Officer Cain stated 'off on the shoulder of the road.' Transcript of Preliminary Hearing at p. 35. The point regarding the hazardous location can be further disregarded when a review of the reasons for impoundment are cited. Officer Cain testified at the Preliminary Hearing that he was impounding the car pending an 'auto theft investigation.' Transcript of Preliminary Hearing at p. 41.

At the Motion Hearing the State, in its attempt to get the officer to testify that the Smith car was a road hazard, asked Officer Cain, 'Was that the only basis upon which you impounded the car?' He responded, 'As far—yes, yes, yes.' Transcript Vol. I at p. 22.

'Yes, yes, yes.' Auto theft investigation was his reason. Officer Cain did not impound the vehicle because of a supposed road hazard. This was manufactured by the State as an 'objective' reason to save its case regarding this suppression issue. The point can be laid to rest by the review of the officer's impound sheet and police report, which were prepared prior to the State's recognition of its need to manufacture a valid warrant exception. Officer Cain admitted during cross-examination that there was no mention of a road hazard in his police report or the impound sheet. Transcript Vol. I at pp. 38–39. If the position of the car was so important, why was it not listed in these documents.

The 'reason' listed in Officer Cain's impound sheet is Idaho Code Section 37–2744(a)(4), the forfeiture section. Appellant's Brief, 43–45.

The auto theft justification for impoundment is similarly baseless. The district court found:

Officer Cain testified that his reason for impounding the vehicle was because he suspected it of being stolen. The evidence that the vehicle was stolen is very weak, and was very weak at the time. Tr. Vol. II, 219.

Finally, the inventory search itself shows that the search was conducted for investigative rather than inventory purposes. The impound sheet on which the inventory is recorded listed only cassette tapes. Tr. Vol. I, 25. It did not state how many tapes were in the car. The impound sheet did not list any of the other items that were in the car at the time of the arrest, such as the jack equipment, the hubcap, the shoes or any of the other smaller items. Tr. Vol. I, 67. It appears that Officer Cain ended his "inventory search" once he discovered the drugs:

Well, as I was searching the car, looking or inventorying its contents, rather, or looking for items of value I believe I was looking in the glove box [where the cassettes were found] when I looked over on the seat, I had my hand on the seat and I

could see a bulge [the cocaine] underneath the seat cover.

Tr. Vol. I., 23. The evidence in the record supports the conclusion that the inventory search was a pretext for an investigative search.

## CONCLUSION

Neither the inventory search exception or the search incident to arrest exception properly applies to the search conducted in this case. The warrantless search was therefore unreasonable and violated the fourth amendment to the United States Constitution and art. 1, § 17 of the Idaho Constitution. The district court's denial of the defendant's motion to suppress the evidence obtained by the search must be reversed, and the conviction on the charge of possession of a controlled substance must be vacated.