900 P.2d 196

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Walter WEAVER, Defendant–Appellant,**

No. 21673.

Supreme Court of Idaho,
Boise, February 1995 Term.

July 25, 1995.

Jonathan B. Hull, Kootenai County Public Defender, Coeur d'Alene, for appellant.

Hon. Alan G. Lance, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., argued, Boise, for respondent.

McDEVITT, Chief Justice.

## I.

### BACKGROUND

The facts of this case, based on testimony at the suppression hearing, are as follows. The Weaver family came to the attention of the Kootenai County Sheriff's Department in the fall of 1992, when Appellant Walter Weaver's brother, Bob Weaver, took his wife, Charlotte, hostage during a domestic dispute. Bob was killed during the standoff. A few days after that incident, Charlotte contacted Sergeant Kenneth Sopher (Sgt. Sopher) at the Sheriff's Department about information she had received from members of Bob's family. They had informed Charlotte that Walter Weaver (Weaver) and his mother, Pearl Weaver (Mrs. Weaver), were on their way to Idaho to kill Charlotte in retaliation for Bob's death. They said that Mrs. Weaver possessed a gun. Charlotte conveyed this information to Sgt. Sopher and gave him a description of the car in which Weaver and his mother were travelling. Sgt. Sopher contacted Pennsylvania authorities who informed him that Weaver was on parole for a burglary conviction and was in violation of parole terms for failing to maintain contact with his parole officer.

On October 1, 1992, Sgt. Sopher received a warrant for Weaver's arrest from the State of Pennsylvania. On the same day, Sgt. Sopher received a telephone call from the Idaho State Patrol informing him that Weaver was at that moment standing in the State Patrol offices. Weaver was asking the location of Bob's remains and the address of Charlotte Weaver. Sgt. Sopher requested that the State Patrol officer, under the guise of giving directions to Charlotte's house, direct Weaver to the Kootenai County Sheriff's Department. The State Patrol officer complied. Weaver and his mother left, believing they were on their way to Charlotte's home, but actually driving toward the Sheriff's Department.

Their vehicle was stopped en route by Kootenai County Sheriff's deputies. Weaver was removed from the vehicle and arrested on the Pennsylvania warrant. Mrs. Weaver, who was more than seventy years of age, was also removed from the car and placed in the rear seat of a patrol car for her comfort. Sgt. Sopher then ordered a deputy to inventory the vehicle. The deputy, using a standard sheriff's department inventory form, began searching the automobile and listing the items found. He discovered a handgun under the spare tire in the trunk of the vehicle. A telexed inquiry to the National Crime Information Center yielded information that the gun was stolen. The officer then arrested Mrs. Weaver, who, in the interim had

**290**

been determined to be the owner of the vehicle, for grand theft by possession of stolen property. The charge against Mrs. Weaver was subsequently dismissed.

Walter Weaver was subsequently charged with unlawful possession of a firearm by a felon, I.C. § 18–3316, and grand theft by possession of stolen property, I.C. §§ 18–2403(4), 18–2407(1). Weaver filed a motion to suppress the gun as evidence, contending that the warrantless search of the automobile was unconstitutional. The trial court denied the motion and held that the search was a valid inventory search following impoundment of the automobile. Weaver then entered a conditional plea of guilty to the charge of unlawful possession of a firearm by a felon, reserving the right to appeal the denial of his motion to suppress. The grand theft charge against Weaver was dismissed.

On October 17, 1994, the Court of Appeals issued an opinion affirming the district court's order. In reaching its decision, the court reasoned that Sgt. Sopher's conclusion, that Mrs. Weaver was physically incapable of driving the car and impoundment of the vehicle was therefore necessary, was reasonable at the time that it was made. Thus, the court concluded, impoundment of the vehicle was permissible and an inventory search of its contents pursuant to standard police procedures was reasonable.

On November 7, 1994, this Court, pursuant to its authority to review Court of Appeals decisions *sua sponte,* issued an order for review.

## II.

### THE DISTRICT COURT ERRED IN FAILING TO SUPPRESS THE GUN AS EVIDENCE SEIZED IN A WARRANTLESS SEARCH OF THE VEHICLE.

#### A. STANDARD OF REVIEW.

 On appeal from a decision of the Court of Appeals, this Court considers that it is hearing the matter in the first instance, and not merely reviewing the correctness of the Court of Appeals decision. *Valley Bank v. Stecklein,* 124 Idaho 694, 696, 864 P.2d 140,

142 (1993). In all cases when questions of law are presented, this Court is not bound by the district court's findings, but is free to draw its own conclusions from evidence presented. *Automobile Club Ins. Co. v. Jackson,* 124 Idaho 874, 865, 876, 865 P.2d 965, 967 (1993).

#### B. THE VEHICLE IMPOUNDMENT INVENTORY EXCEPTION TO THE FOURTH AMENDMENT PROHIBITION AGAINST WARRANTLESS SEARCHES.

The district court did not cite any case authority for its order denying Weaver's motion to suppress. However, there is a well-established body of jurisprudence, from this Court and the United States Supreme Court, governing the reasonableness of warrantless inventory searches under the Fourth Amendment.

 Warrantless searches are presumptively unreasonable. *State v. Woolery,* 116 Idaho 368, 370, 775 P.2d 1210, 1212 (1989), *cert. denied,* —— U.S. ——, 114 S.Ct. 1623, 128 L.Ed.2d 348 (1944). The burden of proof rests with the State to demonstrate that the search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.*

 When the police have lawfully impounded an automobile in carrying out their community caretaking function, they are permitted to inventory its contents. Such warrantless inventory searches, when conducted in compliance with standard and established police procedures and not as a pretext for criminal investigation, do not offend Fourth Amendment strictures against unreasonable searches and seizures. *Colorado v. Bertine,* 479 U.S. 367, 374, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman,* 428 U.S. 364, 374–75, 96 S.Ct. 3092, 3099–100, 49 L.Ed.2d 1000 (1976); *State v. Smith,* 120 Idaho 77, 80–81, 813 P.2d 888, 891 (1991).

 An inventory following impoundment is a reasonable and legitimate means to safeguard the owner's property, to prevent claims against the police for lost or stolen

property, and to protect the police and others from dangerous instrumentalities that may be inside the vehicle. *Bertine,* 479 U.S. at 374, 107 S.Ct. at 742; *Opperman,* 428 U.S. at 372, 96 S.Ct. at 3098–99; *Smith,* 120 Idaho at 80, 813 P.2d at 891. However, the impoundment itself must be lawful. An impoundment of a vehicle constitutes a seizure and is thus subject to the limitations of the Fourth Amendment. If the impoundment violates the Fourth Amendment, the accompanying inventory is also tainted, and evidence found in the search must be suppressed.

■ In order to comport with the Fourth Amendment prohibition against unreasonable seizures, an impoundment must be reasonable under all the circumstances known to the police when the decision to impound was made. *Opperman,* 428 U.S. at 372–73, 96 S.Ct. at 3099. In *State v. Hobson,* 95 Idaho 920, 523 P.2d 523 (1974), we adopted the standard announced by the United States Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for analyzing the reasonableness of an officer's conduct in a seizure context. First, this Court stated, the information underlying the seizure must possess specificity and some indicia of reliability. In this regard, the officer's conduct must be judged against an objective standard:

> would the facts available to the officer at the moment of the seizure or search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? [Citations omitted]. Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches.... [Citations omitted]. And simple 'good faith on the part of the ... officer is not enough'.... If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects,' only in the discretion of the police.

*Hobson,* 95 Idaho at 925, 523 P.2d at 528 (quoting *Terry,* at 392 U.S. at 21, 88 S.Ct. at 1880) (alterations in *Hobson* ). The applicability of this standard to the search and seizure of an automobile was noted in *State v. Godwin,* 121 Idaho 491, 496, 826 P.2d 452, 457 (1992) (McDevitt, J., specially concurring).

In *Bertine,* the United States Supreme Court held that police may exercise discretion in determining whether to impound a vehicle, provided that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. 479 U.S. at 375, 107 S.Ct. at 743.

## C. THE DECISION TO IMPOUND THE VEHICLE WAS NOT REASONABLE.

■ Applying the foregoing standards to the facts here, the question becomes what facts were available to Sgt. Sopher at the moment of his decision to impound the vehicle, and was the impound conducted according to the Kootenai County Sheriff Department's standard criteria?

What Sgt. Sopher observed was that: (1) Weaver had been driving the vehicle when it was stopped; (2) the vehicle was in the roadway; and (3) Mrs. Weaver was elderly and appeared unsteady on her feet as she exited her vehicle and walked to the nearby patrol car. From these observations Sgt. Sopher concluded that Weaver was the owner of the vehicle; the vehicle's location presented a traffic hazard; and that, because Mrs. Weaver appeared unable to drive the vehicle, impoundment was necessary.

However, the information that was readily available to Sgt. Sopher, as demonstrated by his own testimony,[1] was that: (1) Mrs. Weaver was the owner of the vehicle; (2) she had a valid driver's license; and (3) she claimed to be able to drive the car. Based on this information, Sgt. Sopher testified that, under the policies of the Kootenai County Sheriff's Department, he would not have authority to impound the car.[2] However, Sgt. Sopher did

---

1. Sgt. Sopher testified that he became aware of the pertinent facts between five to ten minutes after he ordered the vehicle impounded and inventoried. Tr. p. 53, LL. 3–24; p. 57, L. 20—p. 58, L. 5.

2. Tr. p. 54, LL. 1–6; p. 56, LL. 8–12.

not discover this information until after he impounded the vehicle and ordered an inventory search because he did not make any inquiries before deciding to impound the vehicle.[3]

In *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), the United States Supreme Court held that, while room must be allowed for some mistakes on the part of police in the interest of effective law enforcement, the mistakes must be those of reasonable persons. In *Filer v. Smith,* 96 Mich. 347, 55 N.W. 999, (1893), the Michigan Supreme Court held that where there is an opportunity for inquiry and investigation, inquiry and investigation should be made. *See United States v. Woolbright,* 831 F.2d 1390 (8th Cir.1987) (recognizing a duty to investigate further to the extent that law enforcement is not unduly hampered); *cf. Bigford v. Taylor,* 834 F.2d 1213, *cert. denied,* 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 108 (1988) (no probable cause exists where minimal further investigation would have reduced any suspicion created by the facts the police had discovered).

Sgt. Sopher testified that, pursuant to Kootenai County Sheriff's Department policy he would not have authority to impound a vehicle if the owner of the vehicle: (1) was not under arrest; (2) had a valid driver's license; and (3) claimed to be capable of driving. A person of reasonable caution would not be warranted in the belief that a decision to impound the vehicle was appropriate without first attempting to discover the readily ascertainable, pertinent facts. Because the impoundment of the vehicle itself was not reasonable, the state has failed to meet its burden of proving that the warrantless search of the Weaver vehicle falls within the inventory exception to the warrant requirement of the Fourth Amendment.

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's denial of Weaver's motion to

suppress the evidence discovered in the warrantless search.

JOHNSON and TROUT, JJ., and TRANSTRUM, J. Pro Tem, concur.

SILAK, Justice, specially concurring:

I concur in the Court's opinion, and write only concerning the argument made by the state at the hearing that the impoundment and subsequent search of Pearl Weaver's vehicle were authorized by I.C. § 49–662(3)(c). This statute authorizes impoundment of a vehicle when the person driving or in control of the vehicle is arrested for an offense requiring an appearance before a magistrate. The state did not rely upon this statute as authorization for impoundment at the hearing in the district court on Weaver's motion to suppress evidence, but raised the issue only on appeal as an alternative ground for affirmance of the district court's order.

The state argues that the statute provides authority for the actions of the officers here. The authorization for impoundment under I.C. § 49–662(3)(c) does not establish compliance with the requirements of the Fourth Amendment. *See Opperman,* 428 U.S. at 372, 96 S.Ct. at 3098 (the inquiry is not whether the search was authorized by state law but whether it was reasonable under the Fourth Amendment). Thus, even if the Court concluded that the impoundment was authorized under § 49–662(3)(c), a matter upon which the Court's opinion does not pass, the remainder of the constitutional analysis, with which I concur, would still be necessary.

---

**3.** Tr. p. 41, LL. 9–13; p. 53, LL. 3–8.