**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42321**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 3** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: January 8, 2016** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JOHN PATRICK LINZE, JR.,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

Judgment of conviction for possession of methamphetamine, vacated.

Sara B. Thomas, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant. Sally J. Cooley argued.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

_____

MELANSON, Chief Judge

John Patrick Linze, Jr. appeals from his judgment of conviction for possession of methamphetamine. Specifically, Linze argues that the district court erred in denying his motion to suppress. For the reasons set forth below, we vacate.

The following facts were established at the hearing on Linze's motion to suppress. At approximately 10:19 a.m., an officer conducted a traffic stop. The officer contacted the driver and explained that the reason for the stop was because the vehicle had a spiderweb-cracked front windshield in violation of I.C. § 49-902. Linze was a passenger in the vehicle. After contacting the occupants of the vehicle, the officer ran both the driver's and passenger's identifications and checked whether either had outstanding warrants. At that time, the officer was advised that Linze had an extensive drug history and had recently been stopped by other officers, who found

drug items in Linze's possession. The officer testified that he called for a canine unit at approximately 10:28 a.m. to conduct an exterior sweep of the vehicle. While he waited for the canine unit to arrive, the officer continued conducting the warrant checks for the driver and Linze and began writing the driver a citation for driving with a cracked windshield. The officer testified that he did not purposefully delay the process to allow the canine unit to arrive. The officer did not complete writing the citation until after the search was completed.

The canine officer arrived at 10:38 a.m.--ten minutes after the initial officer requested the canine unit and nineteen minutes after the vehicle was stopped. The canine officer testified that, upon arriving, he spoke with the initial officer for a few seconds and then approached the driver of the vehicle. The canine officer asked for consent to search the interior of the vehicle. Neither party gave consent to search the vehicle so the canine officer walked his dog around the exterior of the vehicle. While the canine officer walked the dog around the vehicle, the initial officer stayed outside of his vehicle and provided "officer cover." The initial officer explained that the canine officer was unable to watch his surroundings while conducting the canine sweep and, therefore, the initial officer believed it was necessary to watch and make sure nobody tried to harm the canine officer.

The canine officer testified that it took thirty seconds before the dog gave a positive alert at the front of the vehicle near the engine. After the canine alert, both officers searched the interior of the vehicle. The canine also searched the interior and gave a positive alert to the front dashboard of the vehicle. The canine officer visually located a glass pipe with white crystal residue, and the initial officer retrieved the pipe from the passenger door panel armrest. Upon finding the pipe, the initial officer advised Linze and the driver of their *Miranda*[1] rights. After the *Miranda* warning, Linze admitted ownership of the pipe and admitted that he used the pipe to consume methamphetamine. Linze was charged with possession of methamphetamine. I.C. § 37-2732(c)(1). Linze filed a motion to suppress, arguing that his search and seizure were unlawful. The district court denied his motion and Linze entered a conditional plea of guilty to possession of methamphetamine. Linze appeals.

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1996).

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Although Linze contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, this Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Linze's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The state may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* The automobile exception to the warrant requirement authorizes a warrantless search of a vehicle when there is probable cause to believe the vehicle contains contraband or evidence of criminal activity. *United States v. Ross*, 456 U.S. 798, 824 (1982); *State v. Smith*, 152 Idaho 115, 120, 266 P.3d 1220, 1225 (Ct. App. 2011).

Linze argues that the district court erred in finding that the duration of the traffic stop was not unlawfully extended. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). An

investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). There is no rigid time limit for determining when a detention has lasted longer than necessary; rather, a court must consider the scope of the detention and the law enforcement purposes to be served, as well as the duration of the stop. *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *State v. Ramirez*, 145 Idaho 886, 889, 187 P.3d 1261, 1264 (Ct. App. 2008).

Recently, the United States Supreme Court reviewed the issue of whether a police officer may extend an otherwise completed traffic stop to conduct a dog sniff. The Court noted that, while an officer may conduct certain unrelated checks during an otherwise lawful traffic stop, the officer may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual. *Rodriguez v. United States*, ___ U.S. ___, ___, 135 S. Ct. 1609, 1615 (2015). The Court noted that a dog sniff, which is aimed at detecting evidence of criminal wrongdoing, is not an ordinary element of a traffic stop and cannot be fairly characterized as part of the officer's mission. *Id.* Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. *Id.* at ___, 135 S. Ct. at 1614. Authority for the seizure thus ends when tasks tied to the traffic infraction are, or reasonably should have been, completed. *Id.* Thus, in the context of a dog sniff, the Court determined that the critical question is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff prolongs or adds time to the stop. *Id.* at ___, 135 S. Ct. at 1616.

Linze argues that the officer intentionally delayed completing the purpose of the stop to allow time for the drug dog to arrive. In addition, Linze asserts that, once the drug dog arrived, the initial officer assisted in the dog search, which unlawfully prolonged the stop. We address each allegation below.

4

The first question is whether the officer prolonged the stop by delaying writing the citation in order for the canine unit to arrive. In this case, the officer took over nineteen minutes to check the driver's and Linze's identifications and write a citation--nine minutes before the canine unit was requested and an additional ten minutes after the canine unit was requested until it arrived. It is unclear what, specifically, the officer was doing during the ten-minute period before the canine officer arrived. However, when asked why it took nineteen minutes, the officer testified that, "I was thorough. On my warrant checks I ran both through the computer. And my handwriting is very sloppy, so I take my time when I write my tickets." The district court found that "there was no evidence that [the initial officer] unlawfully delayed [Linze] or extended the duration of the stop any longer than was reasonable." There was no finding by the district court indicating what amount of time is reasonable to conduct a stop and issue a citation for a cracked windshield. Accordingly, there is room to question the district court's conclusion regarding whether nineteen minutes was a reasonable amount of time in this case. However, even assuming the nineteen minutes was reasonable and the officer did not unreasonably prolong writing the citation to allow time for a canine unit to arrive, it is uncontested that the officer provided cover for the canine officer in order to protect the canine officer's safety during the canine sweep.

The second question is whether the officer prolonged the stop by assisting in the canine sweep of the vehicle. When the canine officer arrived, the initial officer stepped out of his patrol car and explained the reason the vehicle was stopped and the reason the initial officer called for a canine unit. The canine officer then spoke with the driver and Linze before initiating the canine sweep. The initial officer testified that, while the canine officer conducted the canine sweep, the initial officer stayed outside of his vehicle and provided "officer cover." The initial officer explained that the canine officer was unable to watch his surroundings while conducting the canine sweep and, therefore, the initial officer believed it was necessary to watch and make sure nobody tried to harm the canine officer. Approximately thirty seconds after the sweep began, the canine alerted on the vehicle, indicating the presence of drugs in the vehicle. It is undisputed that over two minutes elapsed from the time the canine officer arrived and when the canine alerted on the vehicle.

5

The district court did not address when the citation for a cracked windshield should have reasonably been issued or whether the initial officer's providing officer cover unconstitutionally prolonged the stop. The district court is not at fault for failing to make these findings because it did not have the benefit of *Rodriguez*. Although the district court did not make specific findings, it is clear from the record that the initial officer was not moving forward with the purpose of the stop--issuing a citation for a cracked windshield--for approximately two and a half minutes. Instead, he was assisting with a canine sweep. The Supreme Court in *Rodriguez* held that the central question regarding canine sweeps is whether the sniff prolongs or adds time to the stop. In light of *Rodriguez*, we hold that the initial officer's participation in the canine sweep added approximately two and a half minutes to the stop, resulting in an unlawful extension of Linze's detention. Further, there was not reasonable suspicion to conduct an investigation for drug-related offenses, justifying the extension of Linze's detention. Thus, the district court erred in denying Linze's motion to suppress evidence obtained through the unlawful canine sweep.

Linze also argues that the district court erred in finding that the drug dog's alert gave the officers probable cause to search the interior of the vehicle without a search warrant. It is well settled that, when a reliable drug dog indicates that a lawfully stopped automobile contains the odor of controlled substances, the officer has probable cause to believe that there are drugs in the automobile and may search it without a warrant. *State v. Tucker*, 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999); *State v. Gibson*, 141 Idaho 277, 281, 108 P.3d 424, 428 (Ct. App. 2005). However, Linze asserts that, in his case, the drug dog's alert did not provide probable cause because that particular drug dog was unreliable. Because the canine sweep itself was unconstitutional, we need not address whether the canine's alert provided reasonable suspicion.

In light of *Rodriguez*, the district court erred in denying Linze's motion to suppress because the canine sweep violated Linze's Fourth Amendment right to be free from unreasonable searches and seizures. Because the sweep was unconstitutional, we need not address whether the canine's alert provided reasonable suspicion to search the vehicle. Therefore, the district court erred in denying Linze's motion to suppress, and we vacate Linze's judgment of conviction for possession of methamphetamine.

Judge GUTIERREZ and Judge HUSKEY, **CONCUR**.