**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43838**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Unpublished Opinion No. 696** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed:  September 20, 2016** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **TERENCE PAK SING TSUI,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Lynn G. Norton, District Judge.

Order denying motion to suppress, <u>reversed</u>; judgment of conviction for possession of methamphetamine, <u>vacated</u>.

Eric D. Fredericksen, Interim State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Terence Pak Sing Tsui appeals from his judgment of conviction entered upon his conditional guilty plea to possession of methamphetamine.  Specifically, Tsui argues the district court erred in denying Tsui's motion to suppress evidence found on his person.  For the reasons set forth below, we reverse the district court's order and vacate Tsui's judgment of conviction.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Two probation officers arrived at the home of a felony probationer to conduct a residence check.  While outside the home, the officers encountered an individual sitting in a parked vehicle.  The individual indicated he was waiting for someone across the street.  After knocking on the door of the probationer's home, a woman let them inside.  The woman called upstairs for

1

the probationer, who came downstairs. Tsui came to the stairs shortly thereafter. As Tsui came downstairs, he had his hands in the pockets of his sweatshirt, and he appeared nervous. One of the officers asked Tsui if he had any weapons, and he responded that he did not. Tsui did not make eye contact with the officer and kept looking around the room. Once Tsui reached the bottom of the stairs, the officer told Tsui that the officer needed to search Tsui for weapons. Tsui complied with the officer's demand.

As the officer was performing a frisk of Tsui's torso, the officer detected a strong odor of marijuana. The officer also felt a significant bulge in Tsui's pants pocket. The officer asked Tsui if he had marijuana on his person, and Tsui responded affirmatively. The officer asked to see the marijuana, and Tsui removed a bag of marijuana from his pants pocket. The officer then contacted the Boise Police Department. An officer with the Boise Police Department then arrested Tsui and searched him incident to arrest. During that search, the officer discovered methamphetamine.

The State charged Tsui with felony possession of a controlled substance, misdemeanor possession of a controlled substance, and misdemeanor possession of drug paraphernalia. Tsui filed a motion to suppress on the grounds that the officer's frisk was unlawful. Following a hearing, the district court denied Tsui's motion. Tsui entered a conditional guilty plea to felony possession of a controlled substance, Idaho Code § 37-2732(c), reserving his right to appeal the district court's denial of the suppression motion. Tsui timely appeals.

## II.

## ANALYSIS

Tsui contends the district court erred in denying the motion to suppress. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

2

**A.     Frisk**

Tsui argues that the district court erred in finding the officer's frisk lawful. He contends the officer did not have the requisite particularized suspicion that Tsui was armed and presently dangerous, and thus the frisk violated his Fourth Amendment right to be free from unreasonable searches. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Generally, evidence obtained as a result of an unreasonable search must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). Warrantless searches are presumed to be unreasonable. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* One such exception is an officer's frisk for weapons acknowledged by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

Under *Terry*, an officer may conduct a limited pat-down search, or frisk, "of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons." *Id.* at 16. A frisk is justified only if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous, and nothing in the initial stages of the encounter serves to dispel this belief. *Id.* at 27; *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000); *State v. Fleenor*, 133 Idaho 552, 555, 989 P.2d 784, 787 (Ct. App. 1999). In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. Although an officer need not possess absolute certainty that an individual is armed and presently dangerous, an officer's "inchoate and unparticularized suspicion or 'hunch'" will not justify a frisk. *Terry*, 392 U.S. at 27.

Idaho courts consider several factors in deciding whether a reasonable person in an officer's position would conclude that a particular individual is armed and dangerous. *See, e.g.*, *State v. Bishop*, 146 Idaho 804, 819, 203 P.3d 1203, 1218 (2009); *State v. Crooks*, 150 Idaho 117, 120-21, 244 P.3d 261, 264-65 (Ct. App. 2010). These factors include, but are not limited to, whether the suspect appears to be armed or concealing a weapon, *see, e.g.*, *Fleenor*, 133 Idaho at 556, 989 P.2d at 788 (considering individual had knife sheath on his belt); the time and location of the encounter, *see, e.g.*, *Crooks*, 150 Idaho at 120, 244 P.3d at 264 (considering encounter

took place in location where narcotics transaction had just taken place); and the general demeanor or reputation of the suspect, *see, e.g.*, *State v. Johnson*, 137 Idaho 656, 661, 51 P.3d 1112, 1117 (Ct. App. 2002) (considering whether the individual is under the influence of an illicit drug).

In *State v. Henage*, 143 Idaho 655, 152 P.3d 16 (2007), an officer testified that he frisked an individual who was acting nervous and admitted to having a knife. *Id.* at 661, 152 P.3d at 22. The officer stated that "once a person tells me they're in possession of a weapon, it compromises my safety." *Id.* at 662, 152 P.3d at 23. However, the officer also testified that the individual was otherwise cooperative and polite during the encounter. *Id.* at 661, 152 P.3d at 22. The officer articulated no other facts regarding the individual's behavior that would lead a reasonable person to conclude that the individual posed any safety risk. *Id.* at 661-62, 152 P.3d at 22-23. The Court concluded that the officer's nonparticularized safety concern regarding individuals with weapons was insufficient to establish the requisite particularized concern as to that particular individual in that specific factual situation. *Id.* at 662, 162 P.3d at 23. Thus, the Court held the officer's frisk was unjustified based on the absence of particularized facts to support a reasonable inference that this particular individual was both armed and presently dangerous. *Id.*

In this case, we focus our inquiry on whether it was objectively reasonable for the officer to conclude a frisk of Tsui was necessary for the protection of the officer and others. At the suppression hearing, the State asked the officer about the circumstances giving rise to his concern that Tsui might be armed and dangerous. The following exchange occurred:

State: Was there anything about [Tsui's] [demeanor] after he said no [to having any weapons on his person] that gave rise to any concerns for you?

Officer: Yeah, just the nervousness. He didn't want to really face me. He just kind of turned and was looking away, trying to look away from me. When I said that I--when I told him I needed to search him, he complied.

State: Do you recall where his hands were?

Officer: His hands were in his sweatshirt pocket, as I recall, when he first came down the stairs.

State: Is there anything about your interaction with Mr. Tsui that based upon your training and experience gave you any concern for your personal safety?

Officer: Yeah, these--I mean, I've ran into situations where people lie to us. So I wanted to make sure that he did not have any fire--or any weapons on him.

4

In finding the officer's frisk justified, the district court also relied on the fact that Tsui was present at the home of a felony probationer and that there were other people in the general area outside the residence.

Notably absent from the officer's testimony is any specific and articulable fact that would support an inference that Tsui was either armed or presently dangerous. The officer testified that when he asked Tsui if he had any weapons, Tsui replied that he did not. The officer also testified that Tsui had his hands in his sweatshirt pocket, but did not connect that fact to any belief that Tsui was concealing a weapon in that pocket. Although the officer testified that there was a person sitting outside the home in a parked car, the officer failed to articulate any connection between that person and Tsui, the probationer, or the residence. The officer also failed to articulate how Tsui's presence in this particular probationer's residence established a unique safety concern.

During the hearing, the officer admitted that his basis for conducting the frisk was Tsui's nervousness and the officer's subjective experience that people lie about not having weapons. Similar to the officer's nonparticularized general concern regarding individuals with weapons in *Henage*, this officer's subjective mistrust of individuals is not sufficiently particularized to Tsui and this specific factual situation. Just as the Court in *Henage* held that the individual's nervousness combined with the officer's subjective mistrust was insufficient to justify the frisk in that case, we conclude that Tsui's nervousness and the officer's mistrust is insufficient to justify the frisk in Tsui's case. None of the objective circumstances preceding the officer's frisk of Tsui justify a suspicion that Tsui was armed and presently dangerous. The officer's frisk of Tsui was unlawful and violated his Fourth Amendment protection against unreasonable searches.

**B.    Discovery of Marijuana**

Tsui's next contention on appeal is that the district court erred in finding that the marijuana was not discovered as a result of the frisk. Tsui argues that the marijuana would not have been discovered but for the unlawful frisk, thus it must be suppressed. The exclusionary rule calls for suppression of evidence obtained through unconstitutional governmental activity. *Segura v. United States*, 468 U.S. 796, 815 (1984); *State v. Wigginton*, 142 Idaho 180, 184, 125 P.3d 536, 540 (Ct. App. 2005). This prohibition against use of derivative evidence extends to the indirect as well as the direct fruit of the government's misconduct. *Segura*, 468 U.S. at 804. Evidence will be excluded as "fruit" where the illegality is the "but for" cause of the discovery of

5

the evidence. *Id.* A defendant need only show that the discovery of the challenged evidence was a product or result of the unlawful government conduct. *State v. McBaine*, 144 Idaho 130, 134, 157 P.3d 1101, 1105 (Ct. App. 2007). Once a defendant meets the burden of showing a factual nexus between the illegality and the discovery of the challenged evidence, the State bears the burden of persuasion to prove the challenged evidence is untainted. *Alderman v. United States*, 394 U.S. 165, 183 (1969); *Wigginton*, 142 Idaho at 184, 125 P.3d at 540.

Here, after the district court found the frisk lawful, it went on to find that discovery of the marijuana was not a result of the frisk. This Court defers to the factual findings of the district court unless those findings are clearly erroneous. Therefore, we review the facts that the district court relied upon to reach its conclusion that the marijuana was not discovered as a result of the frisk. The district court found the following:

> The next issue is actually whether the discovery of the marijuana was from the pat search. In this case I find that it was not. [The officer] actually smelled the marijuana based on his training and experience. And under *State v. Rogoulot*, 123 Idaho 267, and *State v. Shepherd*, 118 Idaho 121, there's no search where an officer lawfully was positioned to smell marijuana. He smelled the marijuana, questioned [Tsui]. [Tsui] consented and pulled the marijuana out of his own pocket. It was not [the officer] going into Mr. Tsui's pocket to obtain the marijuana.

This finding by the district court is not supported by the record. The officer's testimony regarding his detection of the scent of marijuana is as follows:

> State:     And as you got close to [Tsui], did you make any observations?
> Officer:   Yeah, I could smell marijuana.
> State:     Was that a light odor or a strong odor?
> Officer:   It was pretty strong.
> State:     And then as you smelled the--if you could please sequence it for us, the smell of the marijuana to the pat search and how that worked.
> Officer:   As I was pat searching his torso and as I moved down his torso, I could smell marijuana pretty strong. And then I felt a pretty significant bulge in his pocket, in his pant pocket.
> State:     And what did you ask him at that point, if anything?
> Officer:   I asked him if he had marijuana on him. He said, "Yes."
> State:     What did you ask him next?
> Officer:   I asked him if he would show it to me and he retrieved the bag out of his pocket."

The officer's testimony indicates that he did not detect the odor of marijuana until he was in the process of conducting the frisk, which would have required an unusually close proximity between Tsui and the officer. Moreover, the officer did not question Tsui about possessing

6

marijuana until after the officer both smelled the odor of marijuana and felt a bulge in Tsui's pants pocket. The State presented no evidence to indicate that the officer detected or would otherwise have been able to detect the odor of marijuana absent his close proximity during the frisk. There is also no evidence that the officer observed a bulge in Tsui's pocket absent the frisk. Moreover, there was no testimony that the officer would otherwise have inquired about Tsui's possession of marijuana absent the frisk. The record here shows that "but for" the officer's illegal frisk, the marijuana would not have been discovered. Therefore, all evidence obtained as a result of the initial unlawful frisk should have been suppressed.

## III.

## CONCLUSION

Based on the totality of the circumstances, the officer's frisk of Tsui was not justified by specific and articulable facts that would lead a reasonably prudent person to believe that Tsui may be armed and presently dangerous. Because the officer's frisk was an unlawful violation of Tsui's Fourth Amendment right, all evidence obtained as a result of the illegal frisk should have been suppressed. Therefore, the district court's order denying Tsui's motion to suppress is reversed, and Tsui's judgment of conviction is vacated.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.